William C. Bowers, Spotswood D. Bowers and Arthur Coppell, as Trustees under the Last Will and Testament of John M. Bowers; William C. Bowers, Individually and as Trustee under the Will of Justin A. Bliss for Justine A. Stafford and as Trustee under the Will of Justin A. Bliss for Ida E. Bliss, and Martha S. Bowers, Individually, Plaintiffs, *v.* Interborough Rapid Transit Company, Defendant.

*Supreme Court, New York Special Term, July, 1923.*

Actions — what is not a derivative action — railroad lease — guaranty of rent by lessor to stockholders — stockholders may bring action in their own right — pleading — sufficiency of complaint — motion to dismiss complaint before answer denied.

A lease of a railroad provided that the lessee, the defendant, would pay as rent all the expenses and liabilities of the lessor railroad, as well as a further sum, the equivalent of dividends at a stated rate annually on the outstanding stock of the lessor, and further " guaranteed " to the respective shareholders of the lessor such annual dividend " as rent," and provided for having this " guaranty " indorsed on the certificates of stock, the indorsement to be signed for defendant. The lessor covenanted to close its stock transfer books prior to each rent day, and that " such dividend " should be paid to its stockholders.

Plaintiffs, as stockholders, bring an action representative in form, and asserted by defendant to be derivative in character.   *Held,* that it is not a derivative action; that the obligation of the guaranty runs to the stockholders; that they may bring an action in their own right, as distinguished from an action in representation of their corporation on an obligation running to it; that accordingly an absence of allegation essential to the statement of a stockholders' derivative action did not render the complaint insufficient and that a motion before answer to dismiss the complaint for insufficiency should be denied.

The payments " guaranteed " are not dividends, but they are rent. Defendant's obligation, the " guaranty," additional to the obligations running to the lessor, is not collateral to any obligation of the lessor to declare dividends. Though termed a guaranty, probably for the appeal made by that word to lay stockholders and investors, it is an obligation running directly to stockholders, who would not need it to sue in representation of their corporation on the obligations running to the lessor which were undertaken by defendant. Superfluous to that end, it would be rendered ineffective by a construction which would give it no other significance.

As the obligation is intended not only to be for the benefit of the stockholders, but to run to them, and as the agreement itself shows that the parties to the lease intended the " guaranty " to be such that the stockholders could sue on it, they can sue on it in their own right, though they did not execute the contract, which the law recognizes it would be impossible for them to do.

MOTION to dismiss complaint.

*Laughlin, Gerard, Bowers & Halpin* (*Stewart W. Bowers,* of counsel), for plaintiff.

*J. L. Quackenbush* (*J. Osgood Nichols,* of counsel), for defendant.

GAVEGAN, J. This is a motion before answer to dismiss the complaint for insufficiency, defendant contending that plaintiffs are endeavoring as stockholders to maintain a derivative action without alleging that demand has been made on their corporation, Manhattan Railway Company, to sue to enforce the obligation due, as defendant contends, to the corporation, or the futility of a demand. Plaintiffs' position is that they are not suing to enforce payment to their corporation of an obligation due to it, that they are not proceeding in the right of the corporation, but that they are suing for breach of an obligation which runs directly to its stockholders.

They concede that the action is representative in character, the complaint alleging that it is instituted by plaintiffs as stockholders in behalf of themselves and all other stockholders who may desire to join. Plaintiffs argue that the allegations indicating that the action is representative in character are unobjectionable; and that the cause of action is not shown to be derivative by this feature of the complaint. The propriety of these allegations need not be considered; for in relation to them defendant's only argument is that they indicate plaintiffs are suing on an obligation belonging to the corporation and not on one running to the stockholders. The nature of defendant's obligation we shall have to determine from the lease, so we need not concern ourselves with this and other features of the complaint on which defendant comments, especially allegations referring to demands made; for as to them defendant merely points out their effect as indicating the nature and origin

of the right plaintiffs are seeking to enforce. Its character is the only matter as to which any question is raised and the discussion will be limited accordingly. We need not consider the questions as to parties which are discussed, with reference to provisions of the Civil Practice Act, in briefs filed for plaintiffs.

For defendant it is said there may exist a cause of action founded on a right existing in plaintiffs' corporation but plaintiffs have failed to plead the other essential element of a stockholders' derivative action, that their corporation will not or cannot sue to enforce it. For plaintiffs it is asserted that neither of these two elements of such an action is of any concern, for they disclaim any purpose of bringing an action in representation of a corporate right.

This litigation arises as the result of a failure of defendant to pay the rental called for under the lease by which it took over the control, operation and maintenance of the railroads of the Manhattan Railway Company.

In or about the year 1903 defendant, Interborough Rapid Transit Company, leased the roads, operating franchises and equipment of the Manhattan Railway Company, as well as all its other property, for the term of 999 years beginning November 1, 1875.

The lease, which has been made a part of the complaint by a stipulation filed at the suggestion of the court, provides for the payment by the lessee of various obligations and sums as rent. In fact its effect is to give over to the lessee during the continuance of the lease the Manhattan Railway property " as a going concern " and the proceeds thereof, in consideration of the lessee's assuming the lessor's expenses and liabilities and its obligations, whether to governmental authority or to private individuals, to be paid as rent, together with other specified rentals referred to herein as the rent. The lease provides, in substance, that the Manhattan Railway Company shall retain its corporate existence in order that its roads and franchises may be protected and, as by the lessee desired, changed or extended.

It is provided that:

" From and after the expiration of said two years and nine months, and from January 1st, 1906, the lessee hereby covenants and agrees to pay to the lessor, and guarantees to each owner of record of the shares of capital stock of the lessor, as rent, an annual dividend of seven per centum (7%) on his holding of the capital stock of the lessor.

" The lessee hereby covenants and agrees, that it will each and every year during the term hereby granted, beginning with the 1st day of April, 1903, pay to the lessor as rent for the demised property, and hereby guarantees to the respective owners of record

of the shares of the lessor, the said annual dividends free of all charges, in quarter-yearly payments on the 1st days of January, April, July and October in each year, which after January 1st, 1906, shall be equal quarterly payments; the first of such payments to be made on the first day of July, 1903; and the lessee will from time to time execute in proper form a guarantee to the above effect, printed or engraved upon the certificates of stock of the lessor; and as such stock certificates are surrendered for cancellation and issuance of new certificates in place thereof, will from time to time, upon request of the holder renew such guarantee upon all such new certificates.

" The form of such guarantee shall be as follows:

" ' Dividends amounting to six per cent per annum and an additional amount, if earned, not exceeding one per cent per annum, until January 1st, 1906, and after that date, dividends amounting to seven (7) per cent per annum, upon the par value of the outstanding capital stock of the Manhattan Railway Company are guaranteed, and will be paid by the undersigned, in accordance with the terms and provisions of a certain indenture made between the Manhattan Railway Company and the undersigned, dated the first day of January, 1903.

" ' INTERBOROUGH RAPID TRANSIT COMPANY,
" ' by ——————, *Treasurer.*'

" Payment of dividends as above provided by the lessee to the stockholders of the lessor shall constitute payment of rent, in compliance with the foregoing covenants to pay the same to the lessor."

The lessor covenants prior to the rent days to declare dividends respectively equal to the rent installments and to close its stock transfer books, " and that such dividend shall be payable to the " owners " of record of its stock " who shall be such at the time of so closing its transfer books.

It is provided that " no reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the shareholders of record of the lessor."

Defendant points particularly to the provisions requiring the Manhattan Railway Company to close its stock transfer books and regularly to declare dividends to the amount of that part of the rental which is to be paid to stockholders in the form of dividends. Until this is done, and unless the means and machinery for paying dividends, the corporate processes of the Manhattan Railway Company, are put into operation, it is argued that there can be no dividends, no payment of same and, therefore, no obligation on

defendant to make payments. Following along this line defendant would have us conclude that it can pay and is obligated to pay through the Manhattan Railway Company and not otherwise.

It is apparent that the stockholders are to receive, pursuant to the lease, proportionate shares of the rent payments. " Dividends as rent " are the words of the lease. A payment cannot be both, for the two things are essentially different. Dividends come from earnings. The rent is not dependent on earnings. The lease provides that the payments to stockholders shall take the form of dividends. The provisions of the agreement do " not change the character of the payment, but merely the method of the payment. The payment was still to be of rent." *Continental Ins. Co.* v. *N. Y. & H. R. R. Co.,* 187 N. Y. 225, 236.

It may be noted that the complaint here alleges that from the beginning to the first default, in 1921, defendant made the quarterly payments to the lessor's stockholders.

If it assumed no obligation to them, I fail to find any real significance in what the lease sets forth, several times, as a guaranty. It has none as a guaranty of dividends, in the true legal meaning of the word. It is not secondary to an obligation to pay dividends because it supplements no such primary duty of the lessor. It is true that the lessor corporation might eventually be required to pay dividends from net earnings, if it consistently earned them. But it was not obligated to pay its stockholders dividends at the rate of seven per cent quarterly, year in and year out without break for centuries. Collateral to some obligation this agreement might be a guaranty. But there was not and, lawfully, could not be such an obligation to pay dividends whether warranted by earnings or not. The situation is radically different from that where mortgage interest is guaranteed to bondholders; for in such case the corporation is obligated to make interest payments to its bondholders.

Defendant insists that the " guaranty " which it undertook to perform is that the lessor shall apply the rent, when received, to the payment of dividends; and that the promise to pay the rent is to the lessor. Accordingly, defendant argues, there can be no recovery for a breach of the " guaranty " by a stockholder suing in his own right; because payment of the rent is promised to the lessor and not to the stockholders and it is the rent which plaintiffs seek to recover. This argument amounts to nothing more than an assertion that defendant assumed no obligation to the lessor's stockholders. If we accept it as valid the " guaranty " is of no effect. Its meaning would be that defendant agreed that the rent would go to stockholders, taking the form of dividends, if defendant

paid it. If defendant did not, the stockholders would then, according to defendant, have the right, the derivative right, to require the lessor corporation to enforce payment of the rent. But this derivative right is based on defendant's promise to pay the lessor. For it the "guaranty" was unnecessary. Superfluous to that end, it should not be rendered of no effect by a construction which would give it no other significance.

Having agreed to pay the rent to the lessor, defendant proceeded to "guaranty" something to stockholders. If its "guaranty" has any meaning at all similar to what defendant so asserts its meaning to be, it means that defendant agrees that the stockholders will receive rent in dividend form, computable, as to the respective stockholders, in amount as stated and payable quarterly. It was not intended to be of no benefit to the stockholders if defendant elected to breach its agreement to turn the necessary funds into the treasury of the lessor. Briefly, defendant would have us believe it was entirely unsubstantial, a mere catch-penny waved at stockholders or intending investors. Additional to an agreement with the lessor it would be idle to add a promise to stockholders that the lessee would perform such agreement with the lessor, if this promise could not be availed of by the stockholders and if they could proceed only in representation of the rights of the lessor under its agreement with the lessee. The effect would be in the nature of useless repetition, which, it is safe to say, is not what was disclosed to stockholders or investors, at the time the lease was made or while conditions remained suitable to the lessee's carrying out its obligations.

Defendant urges that the rent is payable to the lessor and that only as representing the lessor may the stockholders sue for it. But we are not determining how it is to be paid and we need not be concerned on that score. We are called upon to interpret the additional provisions, the "guarantee," and to determine whether it was intended to add anything to the promise to the lessor to pay the rent, anything conferring a substantial right on the stockholders in addition to the right they might have to represent their corporation, should necessity arise, for the purpose of enforcing the agreement to pay rent to it. As indicated above it is my opinion that there was an undertaking additional to the agreement to pay the rent to the lessor, that it was intended to give the stockholders additional rights and remedies, and that, whereas the failure to pay the rent was a breach affecting them indirectly, the "guaranty" is an undertaking running directly to them.

It is clear that what is termed a guaranty must, if it is to have any significance, be regarded as a promise, in a legal sense, a con-

tractual obligation to pay the stockholders or to see that they are paid quarterly amounts calculated at the specified rate per share. If plaintiffs had only a derivative right, the right to rely on the obligation of the lessee to the lessor, then the expression of this so-called guaranty was altogether useless, adding nothing that was not embraced within the meaning of the other clauses of the sixth article of the lease.

This obligation, running directly to the stockholders, was but one part of the transaction by which the lessor gave up its operative existence, a transaction as to which it may be assumed the directors would not have acted contrary to the wishes of the majority of the stockholders. There is ample warrant for the assumption that the stockholders were to be satisfied by a transaction which reduced their corporation to the subordinate position it was to occupy, so long as the lessee performed its obligations under the lease.

But we are not left to assumption. The promise to the stockholders is clear enough, as are the reasons for it.

In *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 1, the lease did not express any such obligation. Not even was there a requirement that the rent, which was to be measured by the outstanding stock, on the basis of what would be necessary to pay a ten per cent dividend, should be paid out as dividends. The inscription on the certificate was not signed, as it is here. It was held, in conformity with the language used, to be merely informative, indicating that a fund was to be available for the payment of the dividend.

That case and other related cases, such as *Flagg* v. *Manhattan Ry. Co.*, 10 Fed. Rep. 413, are authorities supporting plaintiffs' position here; for the conclusions drawn are based on the absence of language such as we find in the lease now being considered. This was pointed out in *Pennsylvania Steel Co.* v. *New York City Railway*, 198 Fed. Rep. 721, 763, note. Referring to a so-called guaranty to " every present and future holder of said stock " it is said: " The promise is made to the stockholders. They are the persons for whose benefit it was intended. The case comes * * * well within the language of the *Beveridge* case itself:

" ' Within the principles of adjudged cases in this court, where the plaintiff seeks to base his right to maintain his action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such beneficial intent must be clearly found in the agreement.' "

We also find the following in the opinion:

" The inquiry, then, is whether the provisions of this lease call for the application of these principles. The guaranty in the fourth paragraph is to ' every present and future holder of ' Metropolitan

stock ' that dividends at the rate of seven per cent. per annum shall be paid during the term of this lease,' and it is stipulated that the stock certificates may bear the guaranty. The promise is made to the stockholders. They are the real promisees." Id. 762.

" The appellees contend, however, that other provisions of the lease do serve to modify the guaranty and are inconsistent with its running to the stockholders. In particular it is said that the provision that the lessee shall be deemed to have complied with the guaranty as to any quarterly installment of the dividend if it shall pay the amount thereof to the lessor nullifies it as a stockholder's guaranty. We think, however, this provision gave the lessee the option of making any quarterly payment either to the corporation or to the stockholders but that it did not relieve it of liability upon the guaranty unless it did pay to the corporation.

" Let us consider the whole case of paragraph IV. It (1) provided for the payment of a rental equal to 7 per cent. upon the Metropolitan's stock; (2) expressed the intention that all of the rental should be applied for the payment of dividends; (3) gave the City Company the option of paying directly to the Metropolitan stockholders; (4) guaranteed to the stockholders that dividends at the stipulated rate should be paid during the term of this lease; (5) provided that payments to the Metropolitan Company should be deemed to comply with the guaranty to the stockholders.

" The evident purpose of these different clauses was to provide a rental sufficient to make a dividend of 7 per cent. upon the Metropolitan stock and to make sure that the Metropolitan stockholders should get it. The City Company had the option of paying to the Metropolitan corporation or to its stockholders. If it paid to the stockholders the demand of the corporation was satisfied. It it paid to the corporation the stockholders had no claim under the provision in their behalf. But if it failed to pay to either the corporation or to the stockholders then the latter had, upon the principles already examined, a right of action." Id. 763.

For evident reasons the defendant here undertook an obligation, termed a guaranty, probably so termed for the appeal made by that word to the lay stockholder or investor, which is not a mere collateral engagement relating to dividends, but is an original obligation running to the persons holding the stock of the lessor. As such it is manifestly a promise which can be enforced by the persons to whom it runs in form as well as substance. See *Pennsylvania Steel Co.* v. *New York City Railway, supra,* 749, 750, n. We can adopt the language found at page 27 of the report in the *Beveridge* case referred to above and say that here the " promise

17

clearly was for the third person's benefit, and made with that distinct intention."

Indeed, defendant makes no argument that such an obligation running directly to the stockholders could not be availed of directly by them. It is intended to be for the benefit of the stockholders and to run to them. The agreement we have here is sufficient evidence in itself that the parties intended the "guaranty" to be such that the stockholders could sue on it. Stockholders can enforce it in their own right though it was not signed by them. The law recognizes that it would be impractical if not impossible to have such a large class of persons sign the contract, even if they were all identified. See *Seaver* v. *Ransom,* 224 N. Y. 233, 236.

The motion is denied.

Ordered accordingly.