### HARWOOD v. EATON, Collector of Internal Revenue.

#### No. 3503.

District Court, D. Connecticut.

June 6, 1932.

Henry F. Parmelee, of New Haven, Conn. (John H. Weir, of New Haven, Conn., of counsel), for plaintiff.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and S. E. Blackham, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

HINCKS, District Judge.

This matter comes before the court on a demurrer by the defendant to a complaint brought by the plaintiff for the recovery of taxes.

The complaint alleges that during the calendar year 1926 the plaintiff owned 200 shares of the Empire & Bay States Telegraph Company (hereinafter called "The Empire Company"); that long before, in 1890, the Empire Company had leased to the Western Union Telegraph Company (hereinafter called "Western Union"), for a term of ninety-nine years, all of its property, to be managed, operated, and maintained by Western Union, at the latter's cost and risk; that in consideration for said lease Western Union had agreed to pay as rental during the term of said agreement to the stockholders of the Empire Company $12,000 per annum, being 4 per cent. upon the par value of the capital stock of $300,000 of the Empire Company then outstanding; that of this payment of $12,000 annually, no part was payable to the Empire Company or subject to its control; that ever since said lease, up to the present time, the Empire Company has not possessed or operated its system; that, in accordance with its said lease, the Western Union in 1926 became indebted to the plaintiff in the amount of $800, representing an obligation of $4 a share in respect of the 200 shares of the Em-

pire Company owned by the plaintiff; that the plaintiff had duly paid the tax upon his personal income for the year 1926, including in said income the sum of $800 received by him from Western Union as aforesaid; that the Commissioner of Internal Revenue unlawfully assessed an income tax for the calendar year 1926 in the amount of $1,350 against the Empire Company in respect of the $12,000 paid by Western Union directly to stockholders of the Empire Company under the provisions of said agreement, on the ground that said payments constituted income constructively received by the Empire Company during that year; and the Commissioner unlawfully assessed against the plaintiff as a transferee of the property of the Empire Company a tax of $800, together with interest thereon in the amount of $186.10, and collected in all of the plaintiff, under threat of distraint and sale, the sum of $986.10, for which sum the plaintiff seeks recovery.

To this complaint the defendant has demurred on the following grounds:

(a) That the complaint shows that the payments made by Western Union constituted taxable income of the Empire Company under sections 213 and 233 of the Revenue Act of 1926 (26 USCA §§ 954, 985).

(b) That the complaint shows that the plaintiff was and is a transferee of moneys constituting income, assets, and property of the Empire Company within the meaning of section 280 of the Revenue Act of 1926 (26 USCA § 1069).

(c) The complaint shows that the taxes exacted of the plaintiff did not exceed the amount received by him from Western Union as part of the rental due under its lease from the Empire Company.

The position of the defendant, as set forth in his brief, is that each annual payment of $12,000 made by Western Union, even though directly paid to the stockholders of the Empire Company, was income taxable against the Empire Company, and as such became its property. Consequently, to the extent that such "property" found its way into the hands of the plaintiff (i. e., in the sum of $800), the plaintiff took the same, subject to the claim or debt of the government for unpaid income taxes against the Empire Company under the so-called "trust fund doctrine," so that the exaction of the principal amount received by the plaintiff, together with interest, was in all respects proper and lawful.

To be sure, for the contention that the annual payments by Western Union to the Em-

pire stockholder constitute taxable income to the Empire Company, the government has apparent authority in the cases of Rensselaer & S. R. Co. v. Irwin (C. C. A.) 249 F. 726, and West End St. Ry. Co. v. Malley (C. C. A.) 246 F. 625. But these were cases in which the income taxability of lessor corporations under the applicable Revenue Acts was directly and solely at issue. The liability of a "transferee" of the lessor corporation was not there involved. The distinction is important. For the determination of what constitutes taxable income within the reach of the federal government under the Revenue Acts is primarily a matter of statutory construction. And it lies well within the power of Congress to adopt broad and sweeping definitions, if reasonably necessary, to prevent tax evasion.

But the liability of transferee of the taxpayer for the tax assessed against his transferor is the product of municipal law rather than of federal statute. Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138. Whether Congress has power to increase or alter that liability is a question not here involved. For the defendant concedes, and necessarily must, that section 280 (a) of the Revenue Act of 1926 (26 USCA § 1069 (a), which most nearly approaches the subject-matter, does not purport to create or alter such a liability, but merely attempts to provide a method of its enforcement by the Government (the validity of which is questioned by the plaintiff herein, but upon which I find it unnecessary to pass).

Consequently, it results that, even though the payments from Western Union are to be deemed to constitute taxable income as against the Empire Company under the Revenue Act, it may still result that under the municipal law no liability in respect thereto may attach against the plaintiff as a transferee of the Empire Company. There is no fundamental inconsistency in such a situation. For example, under the revenue acts, estates of decedents for purposes of taxation are deemed to include antemortem transfers of property in contemplation of, or intended to take effect in possession or enjoyment at or after, death. But no one apparently questions the efficacy of such transfers to pass title under the municipal law. The result is that property is deemed to belong to the decedent's estate for purposes of taxation which for all purposes of ownership belongs to another. And so it is here that funds which under the municipal law may belong to the plaintiff free from liability at law or in equity as against all the world yet may consti-

tute taxable income as against the Empire Company.

Analysis of the situation portrayed in the complaint convinces me that the moneys paid by Western Union, even though they be assumed to constitute taxable income as against the Empire Company, none the less are the absolute property of the Empire stockholders free from any liability to the government or other debtors of the Empire Company. For when, some forty years ago, the Empire Company leased all of its properties to Western Union under contract whereby the lessee became directly liable to the Empire's stockholders for stipulated annual payments, obviously nothing was left to the Empire Company except its reversion in the leasehold interest. It is significant that the obligation imposed upon Western Union by the acceptance of this lease was not that of a guarantor only. It did not merely guarantee the continued payment of dividends by the Empire Company. On the contrary, it assumed a direct and absolute obligation to make those payments itself. Of course, a contract whereby a corporation undertook to divest itself of all of its properties could not be made without such consent of the stockholders as was required by the statutory law. The situation was as though the stockholders of the Empire Company said to themselves: "Let us substitute for the precarious right to receive dividends of uncertain amount from the Empire Company a right supported by all the stability of Western Union for ninety-nine years to receive stated payments, in respect to our respective holdings of the capital stock of the Empire Company." In its essence, the arrangement was equivalent, both in theory and practice, to a partial liquidation of the Empire Company. All of the corporate assets (except the reversion in the leasehold interest) were disposed of, and the proceeds were distributed among the stockholders pro rata. Thus viewed, it is clear that the plaintiff's right to the payments made during the calendar year 1926 had its only source in the lease of 1890.

The same result follows if the lease is regarded, not as a partial liquidation of the Empire Company, but rather as a contract to which the Empire Company was a party in a capacity or entity wholly distinct from its stockholders. So viewed, under the contract the Empire stockholders became third party donee beneficiaries, and as such entitled to enforce their rights directly against Western Union. Bowers v. Interborough Rapid Transit Co., 121 Misc. Rep. 250, 201

N. Y. S. 198; Peabody v. Interborough Rapid Transit Co., 124 Misc. Rep. 801, 209 N. Y. S. 376, affirmed without opinion 240 N. Y. 709, 148 N. E. 768. See, also, Pennsylvania Steel Co. v. New York City R. Co. (C. C. A.) 198 F. 721, 749. In the event of a breach by Western Union, the only rights left to the Empire Company were to bring suit for specific performance to compel payment, not to Empire Company, but to its stockholders. And so it results that the rights of the Empire stockholders became absolute upon the execution of the lease in 1890. Thus, from that day to this, nothing done by the Empire Company independent of the unanimous consent of its stockholders could subject the rights created by that lease to extraneous liabilities. Thus the trust fund doctrine which the defendant invokes can have no application. For that doctrine, of course, applies only to assets which are severed from an insolvent. There is nothing here to indicate that the Empire Company became insolvent upon the consummation of the lease in 1890.

It will be observed that in this opinion I assume rather than decide that the payments from Western Union constitute taxable income as against the Empire Company. None of the cases cited by the government seem to me conclusive upon that point. The statement of facts in the Malley Case, supra, is meager. It cites with approval the opinion of the trial court in the Rensselaer Case (D. C.) 239 F. 739. But that decision, in the light of the opinion of the court above (C. C. A.) 249 F. 726, seems to have turned upon a construction of the lease there involved. The court found there a primary obligation under the lease flowing from lessee to lessor. Consequently, it was held that the lessee was obligated to make payments directly to the lessor's stockholders as agent, only, for the lessor. In the case of the United States v. Western Union Telegraph Co. (C. C. A.) 50 F.(2d) 102, the same court had under consideration a lease which resembled that in the case at bar far more closely than does that involved in the Rensselaer Case. In that case the decision turned upon another ground, but the court expressly indicated a doubt of the applicability of the Rensselaer decision to such a state of facts. I may therefore be pardoned for thus making it plain that this opinion does not purport to decide that point.

I conclude that on the pleadings here involved the plaintiff's right to annual payments from Western Union was free from all

liability to the government for taxes assessed against the Empire Company, and that the assessment made against him on account of the supposed liability of the Empire Company and the ensuing exaction were without warrant in law.

It results that the demurrer must be overruled, and it is ordered accordingly.