## PHILIP MANSON, Appellant, *v.* F. KINGSBURY CURTIS, Respondent.

**Corporations — stockholders owning majority of stock may legally unite upon a course of action and agree upon officers whom they will elect — directors — powers and duties — agreement between majority stockholders which contemplated that president should be only nominal head of corporation and that directors should remain passive, illegal and void.**

1. It is not illegal or against public policy for two or more stockholders owning the majority of the shares of stock of a corporation to unite upon a course of corporate policy or action or upon the officers whom they will elect. An ordinary agreement, among a minority in number, but a majority in shares, for the purpose of obtaining control of the corporation by the election of particular persons as directors is not illegal. Agreements upon a sufficient consideration between them, of such intendment and effect, are valid and binding, if they do not contravene any express charter or statutory provision or contemplate any fraud, oppression or wrong against other stockholders or other illegal object.

2. All powers directly conferred by statute, or impliedly granted, of necessity must be exercised by the directors of a corporation who are constituted by the law as the agency for the doing of corporate acts. In the management of the affairs of the corporation they are dependent solely upon their own knowledge of its business and their own judgment as to what its interests require. They hold such office charged with the duty to act for the corporation according to their best judgment, and in so doing they cannot be controlled in the reasonable exercise and performance of such duty.

3. The parties to the agreement in suit agreed that through the period of one year after the making of the agreement the plaintiff should manage the corporate business and shape and control the corporate policy of the corporation of which they were stockholders and officers; that the president of the corporation should be only a nominal head and be inattentive to and non-interfering with the business or the policy of the plaintiff. The conditions which the parties wished to meet and their intent also necessitated and contemplated the selecting of directors who should remain passive or mechanical to the will and word of the plaintiff. *Held*, that the agree-

ment is illegal and void and its violation is not a basis for a cause of action to recover damages for its non-performance.

*Manson* v. *Curtis*, 171 App. Div. 954, affirmed.

(Submitted February 7, 1918; decided April 23, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 11, 1915, affirming a judgment in favor of defendant entered upon an order of Special Term overruling a demurrer to certain defenses set up in the answer and dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Blandy* and *Frederick A. Card* for appellant. It was error to dismiss the plaintiff's complaint on the ground that it did not state a cause of action. (*Abbey* v. *Wheeler*, 170 N. Y. 122; *Kain* v. *Larkin*, 141 N. Y. 145; *Millikan* v. *Western Union*, 110 N. Y. 403; *Wheeler* v. *Conn. M. L. Ins. Co.*, 82 N. Y. 543; *Hale* v. *Omaha Nat. Bank*, 49 N. Y. 626; *Wenk* v. *City of New York*, 171 N. Y. 607; *Clark* v. *West*, 193 N. Y. 349; *Hey* v. *Dolphin*, 92 Hun, 230; *Williams* v. *Montgomery*, 148 N. Y. 519; *Scruggs* v. *Cotterill*, 67 App. Div. 583; *Barnes* v. *Brown*, 80 N. Y. 527; *Lorillard* v. *Clyde*, 86 N. Y. 384; *Drucklieb* v. *Harris*, 209 N. Y. 211.) It was error to overrule plaintiff's demurrers to defendant's separate defenses. (*San Remo C. M. Co.* v. *Moneuse*, 149 App. Div. 26; *Matter of Duffy*, 125 App. Div. 406; *Davison* v. *Budlong*, 40 Hun, 245; *W. C. & M. Co.* v. *Holbrook*, 118 N. Y. 586; *Mott* v. *De Nisco*, 106 App. Div. 154; *Browning, King & Co.* v. *Terwilliger*, 144 App. Div. 516; *Fairchild* v. *C. & C. Contract Co.*, 153 App. Div. 277; *Simon* v. *Etgen*, 213 N. Y. 589; *Hawley* v. *Keeler*, 53 N. Y. 114; *Van Dyke* v. *Wood*, 60 App. Div. 208.)

*Howard Taylor* for respondent. The supposed contract set forth in the thirteenth article of the complaint as having been made between the plaintiff and the defendant is against public policy on its face, as it would make plaintiff usurp the functions of the board of directors as well as of the other officers of the transportation company. (*Cont. Securities Co.* v. *Belmont,* 206 N. Y. 7; *West* v. *Camden,* 135 U. S. 507; *Flaherty* v. *Cary,* 62 App. Div. 116; *Abbott* v. *Harbeson Textile Co.,* 162 App. Div. 405; *Fennessy* v. *Ross,* 5 App. Div. 342; *Wilbur* v. *Stoepel,* 82 Mich. 344; Cook on Corp. [5th ed.] 1346, § 622a; *Jackson* v. *Hooper,* 76 N. J. Eq. 603; *Cone* v. *Russell,* 48 N. J. Eq. 214; *Singers-Bigger* v. *Young,* 166 Fed. Rep. 85; *Matter of Germicide Co.,* 65 Hun, 606.)

COLLIN, J. The action is to recover the damages arising to the plaintiff by reason of the acts of the defendant. The Special Term decided, under demurrers of the plaintiff to certain defenses alleged in the answer, that the complaint did not state facts sufficient to constitute a cause of action and should be dismissed. The consequent judgment was affirmed by the Appellate Division.

The determinative allegations of the complaint are: In November, 1911, there existed a domestic corporation, the Bermuda-Atlantic Steamship Company. It was formed in December, 1910, as the successor of a corporation with the same name. The corporate business was operating a steamship, the *Oceana,* between the city of New York and the islands of Bermuda. The plaintiff had through 1911 controlled and managed the corporate business which had been highly successful and profitable. The total outstanding shares of the capital stock were of the aggregate amount of one hundred and eighty-six thousand dollars, of which each of the plaintiff and the defendant owned in the amount of fifty-five thousand dollars, Abel I. Culver owned in the amount of forty

thousand  dollars, and eight others, who became stock-
holders at the solicitation of the plaintiff, who " was able
to control same for voting purposes," owned in the
amount of thirty-six thousand dollars.  The plaintiff
was a director.  The defendant was a director, a lawyer
and the general counsel to the corporation and at all the
times involved had full knowledge of the corporate
affairs and financial condition.  An agreement, known
to the defendant, existed between the plaintiff and
Culver that they would act as a unit in the management
of the corporate affairs " to the end that such policy as
the plaintiff might in his good judgment promulgate in
the conduct and management of the said Company's
affairs, would be acquiesced in and followed by said
Culver;" that neither would dispose of any of his shares
without first giving to the other a first option to buy all
or any part of the shares, and that if occasion arose
Culver would vote his shares as the plaintiff voted his.
The defendant requested plaintiff's permission to purchase
Culver's shares, which added to those held by the defend-
ant would constitute the defendant the holder of more
than one-half of the outstanding shares.  The plaintiff
and defendant thereupon agreed, for a good and valuable
consideration, as follows:

" 1. That for one year thereafter there should be no
change in the business management of the business of the
corporation to that theretofore carried out by plaintiff,
and that the management thereof should continue in the
same manner that it had in the past, and that plaintiff
should continue as General Manager of the corporation
and shape its policy.

" 2. That any President of the corporation to be
thereafter elected should be only a nominal head as
President, and be no more active in conducting the
affairs of the corporation than the then President Abel I.
Culver had been, and that such President should not

change, alter, molest, or interfere with plaintiff's methods of managing the corporate business affairs nor interfere with plaintiff as such General Manager for said one year.

" 3. That out of defendant's stockholdings he would sell to the plaintiff and plaintiff would buy 20 shares or $2,000 thereof at par value after defendant had acquired Culver's said stock.

" 4. That the defendant and the plaintiff should each name three directors of the corporation for immediate future election (making six) and that a seventh director to be elected should be a disinterested party to be mutually agreed upon by plaintiff and defendant with whom should be deposited, and who should be the custodian of $10,000 of stock, $5,000 thereof to be carved out of the plaintiff's holdings and $5,000 out of the defendant's holdings, said $10,000 of stock to be used and voted on by such disinterested person at stockholders' meetings according to his judgment.

" 5. That the said defendant would loan to the company such fund as it immediately required to pay the expense of certain overhauling and repair charges for work which was then about to be made on the steamer *Oceana*, the total cost of which work was estimated at approximately Twelve thousand dollars ($12,000).

" 6. The plaintiff on his part agreed to act as General Manager of the corporation for one year and to conduct and manage the practical business end of the corporation according to his best ability, and to shape its policy, as he had in the past, and to purchase 20 shares of defendant's total holdings and pay defendant $2,000 therefor, and that plaintiff would name three directors of said corporation for immediate future election and that he would co-operate with defendant in the selection of a seventh or disinterested person to be a seventh director and carve out of this plaintiff's total holdings of stock

$5,000 thereof for deposit with such disinterested person for voting purposes."

It was upon the express condition that the agreement be executed and in consideration of it, executed and delivered, that the plaintiff consented to the sale which was made by Culver of his shares to the defendant.

The obligations of the plaintiff under the agreement were performed by him, in so far as performance was permitted. The defendant violated the agreement in that he refused to sell the twenty shares of the stock to plaintiff; he, through his control of dummy directors elected by his majority votes, placed all control and management of the corporate affairs in charge of a person unfit and other than plaintiff; he refused to carve out of his stockholdings five thousand dollars in amount for use by a disinterested party for voting purposes or to co-operate with the plaintiff in the designation of a disinterested party. The business and affairs of the corporation were consequently, negligently and ineffi- ciently carried on in particulars alleged, with the result that in June, 1912, the corporation was adjudicated a bankrupt. The defendant when making the agreement did not intend to carry it out and intended to use his voting power in so injuring the corporate business and reducing the value of the stock, that he could purchase it at a nominal price, and then sell the steamship at a large price to parties with whom he was, when the agree- ment was made, secretly negotiating the sale. When the agreement was made the shares of plaintiff had a market value of the sum of $215,000, and by reason of the acts of the defendant became valueless; the corpora- tion was indebted to the plaintiff for moneys advanced in the sum of $19,582.53 and interest, which said moneys were never paid to plaintiff. Judgment in the sum of $234,582.53 is demanded.

Four affirmative defenses were demurred to and are:

That the agreement was illegal and void; that it was to sell or was a sale of choses in action of the value of $50 or upwards and no writing was signed nor was there part payment by defendant; that it was not to be performed within one year and was not in writing and subscribed by the defendant; that a contract existed under which the plaintiff was regularly and lawfully deposed as general manager. Upon the trial of the issues of law thus raised, the Special Term, applying the rule that a demurrer to an affirmative defense enables the defendant to question the sufficiency of the complaint (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Baxter* v. *McDonnell*, 154 N. Y. 432), adjudged the complaint insufficient.

The primal question is, is the agreement of November, 1911, illegal and void. It does not constitute a voting trust agreement, because under it each party retains the voting power of the shares owned or to be owned by him. The right of voting is with the legal and beneficial ownership. A voting trust agreement accumulates in the hands of a person or persons shares of several owners, in trust for the purpose of voting them, in order, through the selection and election of directors, to control the corporate business and affairs. The agreement does not constitute a proxy or reciprocal proxies because it does not make either party the agent of the other. A proxy is an authority by one, having the right to do a certain thing, to another to do it. The statutes regulating voting trust agreements and the use of proxies (General Corporation Law [Cons. Laws, ch. 23], sections 23, 25, 26, 27) are, therefore, not applicable to the agreement.

It is not illegal or against public policy for two or more stockholders owning the majority of the shares of stock to unite upon a course of corporate policy or action, or upon the officers whom they will elect. An ordinary agreement, among a minority in number, but a majority

in shares, for the purpose of obtaining control of the corporation by the election of particular persons as directors is not illegal. Shareholders have the right to combine their interests and voting powers to secure such control of the corporation and the adoption of and adhesion by it to a specific policy and course of business. Agreements upon a sufficient consideration between them, of such intendment and effect, are valid and binding, if they do not contravene any express charter or statutory provision or contemplate any fraud, oppression or wrong against other stockholders or other illegal object. (*Venner* v. *Chicago City Ry. Co.*, 258 Ill. 523; *Thompson* v. *Thompson Carnation Co.*, 279 Ill. 54; *Palmbaum* v. *Magulsky*, 217 Mass. 306; *Winsor* v. *Commonwealth Coal Co.*, 63 Wash. 62.)

The respondent asserts and argues that the agreement before us contravenes a statutory provision and the policy of the state, because in intent and effect it withdraws from the directors of the corporation that control and direction of the corporate affairs and business which the statutes and the law vest in and confine to them. This assertion we will now consider. The ascertainment of the substantial intent of the parties, as expressed, is the fundamental rule in the interpretation of all contracts. We must look to the agreement as a whole, to the matters with which it deals, to the circumstances under which it was made and thereby determine the true intent and purpose of the parties, and if such intent and purpose is reasonably within the scope of the language used it must be taken to be a part of the agreement the same as if it were plainly expressed. (*People ex rel. New York Central & Hudson River R. R. Co.* v. *Walsh*, 211 N. Y. 90.) The fundamental and dominant intent and purpose of the agreement was that through its fulfillment there should be vested in or continue to be vested in the plaintiff solely and exclusively, for the period named, the

executive administration of the affairs of the corporation. The parties agreed that through the period of one year after the making of the agreement the plaintiff should manage the corporate business and shape and control the corporate policy; that the president of the corporation should be only a nominal head and be inattentive to and non-interfering with the business or the policy or the plaintiff. Such is the clear and certain intent and effect of the paragraphs 1, 2 and 6 of the agreement. Certain allegations of the complaint are confirmatory. The prior agreement between the plaintiff and Culver, the president of the corporation, provided that " they act as a unit in the management of the Company's affairs to the end that such policy as the plaintiff might in his good judgment promulgate in the conduct and management of the said Company's affairs, would be acquiesced in and followed by said Culver." Prior to the transfer by Culver of his stock to the defendant, the plaintiff had shaped the policy and controlled and managed the business of the corporation and thereafter the defendant by his appointee " superseded and set aside the policy previously established and outlined by this plaintiff and set aside and revoked his orders and his contemplated measures theretofore installed and arranged for the future and changed the policy theretofore established by plaintiff in all the departments of the business of said corporation." The exclusive administration by the plaintiff of the affairs of the corporation the agreement provided should continue. The plaintiff and defendant agreed by paragraph " 4 " of the agreement that they would unite in the choice and election of six of the seven directors — a stipulation standing alone innocent and legal. They did not intend in so stipulating to destroy or affect the purpose and intent which induced the agreement as a whole. Manifestly, the agreement would not have been made for the purpose of effecting

that stipulation alone. That stipulation was subordinate. The fundamental and dominant purpose and intent of the parties which necessitated and provided for a passive president of the board of directors necessitated likewise passive directors. The conditions which the parties wished to meet and their intent necessitated and contemplated the selecting of directors who should remain passive or mechanical to the will and word of the plaintiff. The management of the affairs of the corporation by its board of directors and the management of them by the plaintiff as contemplated by the agreement are irreconcilable and mutually destructive.

The prerogatives and functions of the directors of a stock corporation are sufficiently defined and established. The affairs of every corporation shall be managed by its board of directors (General Corporation Law [Cons. Laws, ch. 23] section 34), subject, however, to the valid by-laws adopted by the stockholders. (Section 11, subd. 5; Stock Corporation Law [Cons. Laws, ch. 59], section 30.) In corporate bodies, the powers of the board of directors are, in a very important sense, original and undelegated. The stockholders do not confer, nor can they revoke those powers. They are derivative only in the sense of being received from the state in the act of incorporation. The directors convened as a board are the primary possessors of all the powers which the charter confers, and like private principals they may delegate to agents of their own appointment the performance of any acts which they themselves can perform. The recognition of this principle is absolutely necessary in the affairs of every corporation whose powers are vested in a board of directors. (*Hoyt* v. *Thompson's Executor,* 19 N. Y. 207, 216.) All powers directly conferred by statute, or impliedly granted, of necessity, must be exercised by the directors who are constituted by the law as the

agency for the doing of corporate acts. In the management of the affairs of the corporation, they are dependent solely upon their own knowledge of its business and their own judgment as to what its interests require. (*Beveridge* v. *New York Elevated R. R. Co.*, 112 N. Y. 1.) While the ordinary rules of law relating to an agent are applicable in considering the acts of a board of directors in behalf of a corporation when dealing with third persons, the individual directors making up the board are not mere employees, but a part of an elected body of officers constituting the executive agents of the corporation. They hold such office charged with the duty to act for the corporation according to their best judgment, and in so doing they cannot be controlled in the reasonable exercise and performance of such duty. As a general rule, the stockholders cannot act in relation to the ordinary business of the corporation, nor can they control the directors in the exercise of the judgment vested in them by virtue of their office. The relation of the directors to the stockholders is essentially that of trustee and *cestui que trust*. The peculiar relation that they bear to the corporation and the owners of its stock grows out of the inability of the corporation to act except through such managing officers and agents. The corporation is the owner of the property, but the directors in the performance of their duty possess it, and act in every way as if they owned it. (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194.) Directors are the exclusive, executive representatives of the corporation and are charged with the administration of its internal affairs and the management and use of its assets. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) Clearly the law does not permit the stockholders to create a sterilized board of directors. Corporations are the creatures of the state and must comply with the exactions and regulations it imposes. We conclude that the agreement here is illegal

and void and its violation is not a basis for a cause of action. (*Jackson* v. *Hooper*, 76 N. J. Eq. 592.) This conclusion is not affected by the allegation that the defendant when making the agreement did not intend to carry it out. The illegallity of the agreement was, the law holds, known by both parties. There is no deceit in the intention of the defendant to refrain from performing the agreement, performance of which would violate the law.

We are not unmindful of the rule that an agreement capable of a construction which will make it valid will not be adjudged illegal. (*People ex rel. New York Central & Hudson River R. R. Co.* v. *Walsh*, 211 N. Y. 90; *Shedlinsky* v. *Budweiser Brewing Co.*, 163 N. Y. 437.) The appellant asserts that the fundamental and paramount intendment of the agreement is expressed by its paragraphs " 3 " and " 4 " to which paragraphs " 1," " 2 " and " 6 " are subordinates; the directors were to be free and untrammeled in disregarding the agreements or desires of the plaintiff and defendant. His brief states: " Properly construed, the agreement amounted to nothing more than one to the effect that plaintiff and defendant should unite in voting for certain directors at any election for directors that might be held." The agreement cannot be thus stated. For that purpose alone, it was not and would not have been made. It expresses that the parties intended, through its provisions, to divorce the management of the corporate affairs from the board of directors and secure it to the plaintiff. The contract was single and indivisible and the illegal part cannot be expunged. Its main purpose being illegal, the secondary stipulations fall with it.

The good faith or intention of the parties, or of the plaintiff, in entering into the agreement, does not purge it of the illegality. The doctrine that an advantageous or desirable end justifies unlawful means to its accomplish-

ment has neither foothold nor recognition in the law. The rule that all the stockholders by their universal consent may do as they choose with the corporate concerns and assets, provided the interests of creditors are not affected, because they are the complete owners of the corporation, cannot be invoked here. The fact that the plaintiff was able to control for voting purposes the eight minority stockholders, who were not parties to the agreement, if proved, would not make them parties or establish their consent to the agreement. They might vote in electing directors as the plaintiff requested without affecting their rights as stockholders. They could thereafter insist that the directors so chosen should assume and perform the duties and responsibilities which the law imposes.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.