NINA H. PEABODY, Plaintiff, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Defendant.

Supreme Court, New York Special Term, October, 1923.

Corporations — leases — railroad corporations under Railroad Law, section 148, had power to enter into contract of lease and thereafter modify it — when guaranty of dividends by lessee to stockholders of lessor does not survive modification of lease.

The public policy of the state to permit railroad corporations to lease their property is embodied in section 148 of the Railroad Law which also fixes the method by which they may act.

On January 1, 1903, the Manhattan Railway Company leased all of its railroad franchises and property for a term of 999 years. The lessee, another railroad company, as part consideration for the making of the lease, signed, executed and delivered to the stockholders of the lessor a promise, indorsed upon their certificates of stock, by which it guaranteed the payment of dividends amounting to six per cent per annum and an additional amount, if earned, not exceeding one per cent per annum until January 1, 1906, and after that date dividends amounting to seven per cent per annum upon the par value of the outstanding capital stock of the lessor, " in accordance with the terms and provisions of " the lease, in and by which it was agreed that " no reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor; provided however that nothing herein contained shall otherwise limit the lawful powers of the Board of Directors and shareholders of the Lessor to deal with the subject-matter of this lease and its provisions," and further, from January 1, 1906, the lessee covenanted and agreed to pay to the lessor and guaranteed to each of its stockholders of record, as rent, an annual dividend of seven per cent on their holdings of the capital stock of the lessor. In an action brought by one of the stockholders of the lessor to recover upon the aforesaid promise or guaranty of the lessee, the lessor having failed since January 1, 1922, to pay its stockholders seven per cent dividends, the answer in two separate and affirmative defenses alleged the making of a new contract, which changed the rental to be paid by defendant, made necessary by its financial condition, which contract was approved by more than ninety per cent of its stockholders, and further set forth facts from which it might be fairly inferred that the new contract was not only beneficial to the stockholders of both corporations but was also beneficial to the traveling public. Upon a

motion by plaintiff for judgment on the pleadings, it was admitted by plaintiff that defendant did not by its guaranty intend to assume any liability for the failure of the lessor to pay over to its stockholders any sums which defendant might pay to its lessor for the purpose of dividends; consequently if defendant paid the amount of the rental to its lessor, it would be relieved of liability under the guaranty. *Held*, denying said motion, that under section 148 of the Railroad Law both corporations had power to enter into the contract of lease which became binding and valid when approved by the vote of stockholders owning at least two-thirds of the stock of each corporation, and though the statute was silent upon the subject, the power to make a contract, in the same manner, modifying the lease, was granted by fair implication.

Whatever the rights of plaintiff they were asserted properly by virtue of the direct guaranty of defendant rather than by virtue of the clauses of the lease which gave rise to said guaranty, though to some extent both instruments must be read together.

Assuming that defendant's direct promise to the stockholders of the lessor could not be altered or revoked by agreement between the parties to the lease, said promise was enforcible only according to its terms and if thereby it was made contingent upon the continued existence of an obligation on the part of the promisor to pay rental under the lease, any event which terminated that obligation rendered the promise unenforcible.

In view of the facts that the defendant's obligation under the guaranty in suit was not greater than its promise to pay rent, but merely an agreement with the stockholders of the lessor that defendant would pay in accordance with the lease, that this payment was to be for rent and that the obligation to pay rent could even under the lease be terminated by the lessor taking back the leased property upon default by defendant, the guaranty of payment of seven per cent dividend " in accordance with the terms and conditions of the lease " could not survive a valid revocation or modification of the lease.

The lease having been modified by the parties thereto, the two corporations had no right to demand the enforcement thereof in its original form and the clause that " no reduction of the guaranteed annual dividend rental * * * of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor " was, therefore, invalid and unenforcible.

Motion for judgment on pleadings.

*Werner & McGivney (John Woodward,* of counsel), for plaintiff.

*James L. Quackenbush (J. Osgood Nichols,* of counsel), for defendant.

Lehman, J. The plaintiff is a stockholder of the Manhattan Railway Company. It appears from the complaint that in January, 1903, the Manhattan Railway Company leased all its franchises and property to the defendant and that the defendant thereupon and as part of the consideration for the making of the said lease signed, executed and delivered to the stockholders of record of the lessor company upon their certificates of stock a promise that " Dividends amounting to six per cent per annum and an additional amount if earned not exceeding one per cent per annum, until January first, 1906, and after that date dividends amounting to

seven per cent per annum, upon the par value of the outstanding capital stock of the Manhattan Railway Company are guaranteed, and will be paid by the undersigned in accordance with the terms and provisions of a certain Indenture made between the Manhattan Railway Company and the undersigned dated the first day of January, 1903." The Manhattan Company has not since January 1, 1922, paid its stockholders seven per cent dividends and the plaintiff has now brought this action upon the aforesaid promise or guaranty of the defendant. The defendant has interposed an answer containing both denials and affirmative defenses and the plaintiff has moved for judgment on the pleadings.

Since the argument of the motion Mr. Justice Gavegan, in the case of *Bowers* v. *Interborough Rapid Transit Co.*, N. Y. L. J. July 24, 1923, has overruled many of the contentions of the defendant through which the sufficiency of the complaint was attacked. I shall not upon the present motion reconsider these contentions but shall accept the reasoning of Mr. Justice Gavegan from which it must follow that the complaint herein states facts sufficient to constitute a cause of action and I shall confine myself to the question of whether the answer controverts these allegations either by denial or affirmative allegations.

There is no dispute between the parties as to the making of the lease, the execution of the defendant's promise indorsed upon the certificates of stock of the Manhattan Company and the non-payment of the seven per cent dividends. The defendant's denials are concededly not intended to raise an issue as to these facts but are intended to controvert the assertion of the ultimate facts alleged in the complaint: (1) That the promise of the defendant constitutes a "guaranty;" (2) that the promise of the defendant was executed and delivered to the stockholders of the Manhattan Railway Company; (3) that the lease of the property of the Manhattan Railway Company is still in full force and effect. Briefly stated the defendant's contentions are: (1) That its promise was made to the Manhattan Railway Company and only that company can enforce it in the courts; (2) that the promise indorsed on the certificate is dependent upon the continued existence of the promise contained in the lease for the payment of rental thereunder, and (3) that this promise has been modified by mutual agreement of the lessor and the defendant. All of these contentions are appropriately raised by the answer and if they are sound then the plaintiff is not entitled to judgment on the pleadings and it becomes unnecessary to decide whether any of the denials should be regarded as technically sham or frivolous.

The contention that the defendant's promise indorsed upon the

certificates of stock is not a promise to the individual stockholders upon which they as individuals may bring suit has been overruled in the case of *Bowers* v. *Interborough Rapid Transit Co., supra.* The questions before me may, therefore, be reduced to two points: (1) Has the lease between the Manhattan Railway Company and the defendant been modified by the parties thereto? (2) Does such modification affect the promise made by the defendant to the individual stockholders including the plaintiff?

The original lease ran for 999 years and contained the following provisions: " No reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor; provided however that nothing herein contained shall otherwise limit the lawful powers of the Board of Directors and shareholders of the Lessor to deal with the subject-matter of this lease and its provisions.

" From and after the expiration of said two years and nine months and from January first, 1906, the Lessee hereby covenants and agrees to pay to the Lessor and guarantees to each owner of record of the Lessor as rent an annual dividend of seven per centum on his holding of the capital stock of the Lessor."

Under the provisions of section 148 of the Railroad Law the corporations had power to enter into a contract of lease which became binding and valid when approved by the vote of stockholders owning at least two-thirds of the stock of each corporation and though the statute is silent as to how such a lease when made may be modified, it seems clear that the power to make a contract in the same manner modifying the original lease is granted by fair implication. *Continental Ins. Co.* v. *N. Y. & H. R. R. Co.,* 187 N. Y. 225, 242. The answer in two separate affirmative defenses alleges the making of a contract which changes the rental to be paid by the defendant and sets forth that this new contract was made necessary by the financial condition of the defendant and was approved by more than ninety per cent of the stockholders of the corporation and further sets forth facts from which it may fairly be inferred that this new contract was not only beneficial to the stockholders of both corporations but also beneficial to the traveling public. Nevertheless the contract modifying the original lease in so far as it changes the rental to be paid by the defendant is invalid if the clause of the original lease which provides that " no reduction of the guaranteed annual dividend rental * * * of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor " is valid and enforcible.

I am not impressed with the contention that the change of the

Misc. 647]                    Supreme Court, October, 1923.

lease does not constitute a " reduction of the guaranteed annual rental," but rather a substitution of other consideration for the promised " annual dividend rental," for its inevitable effect is to reduce or even destroy the guaranteed annual dividend rental and I think it was the clear intent of the parties that unanimous consent of all the stockholders should be necessary for such a change in the contract. It is, however, in my opinion, open to serious doubt whether public policy and well-recognized principles of the law applicable to public corporations do not prevent the court from giving this intent of the parties any effect.

Corporations are creatures of the state and can act only for purposes and in the manner authorized by the state. Ordinarily a corporation acts through its officers, and stockholders as such cannot contract for the corporation, though at a meeting of stockholders they may sometimes authorize the corporation to enter into a contract. In other words, though collectively they may be an important part of the machinery through which a corporation transacts its business, individually they are separate entities. The actual result of the clause under consideration in the original lease if given effect, is to render any modification practically impossible for the difficulty of obtaining unanimous consent of the stockholders of a corporation having outstanding 600,000 shares of stock may well be regarded as insurmountable. While parties to a contract may provide that the contract cannot be changed without certain formalities, they may themselves waive these formalities and it would be paradoxical to hold that parties who are free agents may by agreement create obligations towards each other which by agreement they cannot also dissolve. In so far, therefore, as the original lease created only obligations running from one corporation to the other it must be clear that the two corporations may by agreement modify or abrogate that lease in any or all its parts and waive the requirement that certain modifications may be made only with the unanimous consent of all the stockholders of one of the corporations unless that requirement be considered as one which creates a special form of machinery or agency through which the corporation must act in the premises.

The provision under consideration cannot, however, be given such effect. " In corporate bodies, the powers of the board of directors are, in a very important sense original and undelegated. The stockholders do not confer nor can they revoke those powers. They are derivative only in the sense of being received from the state in the act of incorporation." *Manson* v. *Curtis*, 223 N. Y. 313, 322. The public policy of the state to permit railroad corporations to lease their property is embodied in section 148 of the

Railroad Law which also fixes the method by which such corporations must act. In a very real sense in such matters the power of the board of directors is original and undelegated and the stockholders do not confer nor can they revoke those powers. Whether those powers could be limited or, as in the present case, practically rendered nugatory by provisions of the certificate of incorporation under section 10 of the General Corporation Law, need not be considered by me for there is no claim that the certificate of incorporation contains such a provision. In the present case it is the corporation which, by contract made through the agency set up by the statute, seeks to limit or revoke the power of the corporation acting through the same agency to modify the same contract or seeks to create a different agency from that established by law, and such a contract is in my opinion contrary to public policy and, therefore, unenforcible. The stockholders of a corporation and the state have a right to insist that those who are given powers by statute or certificate of incorporation shall, in the exercise of those powers, use an untrammeled discretion (*Manson* v. *Curtis, supra*), and I cannot see how a board of directors with the approval of two-thirds of the stockholders can bind the action of either themselves or of future directors and stockholders. As in the *Manson* case " the rule that all the stockholders by their universal consent may do as they choose with the corporate concerns and assets provided the interests of creditors are not affected, because they are the complete owners of the corporation cannot be invoked here." Even though I should assume, without, however, so deciding, that if all the stockholders consented to the original lease the provision under consideration would be enforcible, yet the fact is that there is no claim that all the stockholders did so agree. The original lease has been modified by the two corporations who were parties to it and they have, therefore, no right to demand enforcement of the lease in its original form. They have acted by the agents who are by law given the power to bind the corporation. The individual stockholders, except in a sense as agents for the corporation required to give their consent to the lease of the corporation, were not parties to the agreement. There may be some doubt as to the exact limits of the rules that a third party may in some instances enforce a contract made for his benefit and that the parties to such a contract may not in all cases revoke the contract made for the benefit of the third party, but neither of these rules can, in my opinion, have any application to the present case. The so-called guaranty of rental dividends indorsed upon the certificates of stock is, as stated above, a direct promise running to the individual stockholders and its construction and effect will

be considered hereafter. The lease itself is clearly made for the benefit of the corporation and contains no promises for the direct benefit of the individual stockholders with the possible exception of the clauses which provide that there shall be no reduction of the guaranteed annual dividend without the unanimous consent of the shareholders of record of the lessor and that the lessee " guarantees to each owner of record of capital stock of the Lessor as rent, an annual dividend of seven per centum (7%) on his holdings of the capital stock of the Lessor." The first of these clauses, as pointed out above, is, in my opinion, illegal and unenforcible and the second of the clauses has been repeated, clarified and in a sense carried out by the direct " guaranty " indorsed upon each certificate of stock and the question in this case which I consider most doubtful is whether the reduction of the *rental* by the parties to the lease can affect the " guaranty," running directly to the stockholders, of dividends amounting to seven per cent per annum upon the par value of their stock. It seems to me quite clear that any rights which the plaintiff may have must be asserted, as in fact they are asserted in this case, by virtue of this direct guaranty rather than by virtue of the clauses of the lease which gave rise to this guaranty, though to some extent the two instruments must be read together.

In considering this point it must be noted at the outset that section 148 of the Railroad Law provides that a contract of lease between railroad corporations " may provide for the exchange or guaranty of the stock and bonds of either of such corporations by the other." The use of the words " guaranty of the stock " may be somewhat inaccurate for technically the stock of the corporation is not an obligation of the corporation but represents rather the ownership of the corporation and certificates at least of common stock contain no original promise which can be " guaranteed " by a third party. Through common usage, however, these words have received a secondary meaning, viz., a promise that each stockholder shall receive payment of an agreed amount as a dividend on his stock. Such a promise is in effect made to the stockholder and since the statute expressly permits a provision for such a promise to be made part of the contract of lease, it is at least open to serious question whether even a valid revocation or modification of the lease can, without the consent of a stockholder, destroy the promise to the stockholder after that promise has been made to the stockholder by indorsement upon his certificate of stock; but such a question can arise only when the " guaranty " is as a matter of fact an absolute promise that each stockholder shall receive payment as a dividend on his stock of

an agreed amount and not a promise contingent upon the continuance of the lease or certain provisions thereof. In other words, even though I assume that a direct promise to the stockholders cannot be altered or revoked by agreement between the corporations, yet the promise can be enforced only according to its terms and if by its terms the promise is made contingent upon the continued existence of an obligation on the part of the promisor to pay rental under the lease, any event which terminates that obligation renders the promise unenforcible.

In determining the meaning of the promise or guaranty I have accepted Mr. Justice Gavegan's statement in *Bowers* v. *Interborough Rapid Transit Co., supra,* that " it is clear that what is termed a guarantee must, if it is to have any significance, be regarded as a promise, in a legal sense a contractual obligation to pay the stockholders or to see that they are paid quarterly amounts calculated at the specified rate per share," but it must be remembered that this promise as contained in the original lease is only to pay " as rent " and as indorsed on the certificates of stock is to pay " in accordance with the terms and provisions " of the lease. It is evident, therefore, that the obligation of the defendant under its " guaranty " must be measured by its obligation to pay rentals under the terms of the lease. I do not mean that it necessarily follows from this fact alone that the defendant's obligation under the guaranty necessarily was changed or terminated by the modification of the defendant's obligation under the lease for undoubtedly when both the lease and guaranty were made the parties contemplated that the obligation of the defendant under the lease to pay rental could not be modified either in amount or duration except by unanimous consent of the stockholders and it might, therefore, well be that it was the intention of the parties that though the obligation of the defendant to the stockholders of the lessor was to be measured by the obligation of the defendant to pay rental under the terms of the lease, no change in these terms should affect the direct obligation of the defendant to any stockholder. In other words, though the terms of the lease in regard to the payment by the defendant of rental are incorporated into the guaranty, it does not follow that a modification of these terms likewise becomes so incorporated, especially where it appears that the parties originally contemplated that such terms should never be altered; and if under the terms of the guaranty read in connection with the original lease, the defendant had obligated itself to pay to each stockholder seven per centum on the par value of his stock as rental or consideration for the lease of the corporate property or even if it had obligated itself to pay such amount if the lessor did

not declare and pay to its stockholders an equivalent dividend, I might hold that this obligation was still enforcible.

In my opinion the guaranty is not, however, open to this construction. While it states that " dividends amounting to seven per centum per annum upon the par value of the outstanding capital stock of the Manhattan Railway Comnany are guaranteed," yet the actual promise of the defendant is contained in the words immediately following, " and will be paid by the undersigned in accordance with the terms and provisions of a certain indenture made between the Manhattan Railway Company and the undersigned dated the first day of January, 1903." Under that indenture the defendant was obligated to pay as rental seven per cent on the par value of the stock to the stockholders or the same amount to the lessor corporation and the plaintiff admits that the defendant did not intend to assume any liability for failure of the Manhattan Railway Company to pay over to its stockholders any sums which the defendant might pay to the Manhattan Railway Company for the purpose of dividends and consequently if the defendant paid the amount of the rental to the lessor corporation it would be relieved of liability under the guaranty. Moreover it appears from the pleadings that the lessor had an option to cancel the lease for any default or defaults on the part of the defendant though the clause of the lease which gave rise to such option is not pleaded. Unless this clause contained a provision that the obligation to pay rental should continue after the lease was terminated, it would seem that the defendant was not obligated to pay any rent after such cancellation. If the defendant after such cancellation was not obligated to pay further rent under the lease then in my opinion the defendant would also not be obligated under its guaranty to pay dividends to the lessor's stockholders for by the terms of that guaranty the defendant's promise to pay was only " in accordance with the terms and provisions " of the lease and when the obligation to pay ceased under the terms and provisions of the lease it also ceased under the terms of the guaranty. While I recognize that in the case before me the defendant's obligation to pay rent under the lease was not terminated in accordance with the terms and conditions of the lease but by agreement of the parties and that when the lease and the guaranty were made the parties did not contemplate that such obligation could be terminated or modified except by unanimous consent of the parties, yet in view of the facts that the defendant's promise to the stockholders was not wider than its promise to the lessor but was merely an agreement with them individually that it would pay in accordance with the lease; that this payment was to be for rent and that the

obligation to pay rent could even under the lease be terminated by the action of the lessor in taking back the leased property upon default by the lessee, I feel constrained to hold that the guaranty of payment of seven per cent dividend "in accordance with the terms and conditions of the lease" could not survive a valid revocation or modification of the lease by the parties to the lease. The present case aptly illustrates the difficulty which arises in construing an agreement when contingencies have arisen which affect the agreement but which were not contemplated by the parties when the agreement was made, but since the guaranty was given as part of the consideration for the lease; since the obligation of the guaranty was met whenever the defendant paid the stipulated rent under the lease over to the lessor corporation, and since I believe that the lessor corporation could not by contract agree not to abrogate or modify the obligation of the lessee to pay rent, I feel constrained to hold that the true construction of the guaranty must be that the defendant's obligation to the stockholders thereunder cannot be greater than its obligation to pay rent. Whatever doubt I may still have on the subject should be resolved in favor of the defendant for under the allegations of the answer public policy and even the interest of the lessor's stockholders required the modification of the lease, and under the circumstances, without far greater certainty than I feel, Special Term should not even temporarily create a condition which is destructive of public interests.

Motion for judgment on the pleadings is, therefore, denied, with ten dollars costs.

Ordered accordingly.