NINA H. PEABODY, Plaintiff, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Defendant.*

Supreme Court, New York Special Term, February 25, 1924.

**Corporations — lease — action by stockholder under provisions of lease guaranteeing payment of dividends — determination of prior motion for judgment on pleadings not bar to motion for judgment under Civil Practice Act, § 476, and for summary judgment under Rules of Civil Practice, rule 113 — lease guaranteeing dividends by lessee corporation to stockholders of lessor corporation not modified as to plaintiff — motions for judgment granted.**

In an action by a stockholder of a lessor railroad corporation upon a lease guaranteeing dividends by the lessee corporation to the stockholders of the lessor corporation, a motion for judgment under section 476 of the Civil Practice Act and for summary judgment under rule 113 of the Rules of Civil Practice should be granted, where it appears that the lease between the two corporations after guaranteeing the payment of dividends contained a provision that no reduction of the guaranteed annual dividends should be made without the

*Affd., 213 App. Div. 857.

51

unanimous consent of the stockholders of record of the lessor railroad, and that though more than ninety per cent of said stockholders agreed to a reduction of the dividend, plaintiff did not assent and in no wise was bound by the transaction, since, as far as he is concerned, the original lease is in full force and effect, and there is no material fact at issue.

A determination of a prior motion in the same action for judgment on the pleadings is not a bar to plaintiff's present motions for judgment, where the prior motion was determined on the pleadings alone and not upon the complete record of the transactions had between all of the parties, since the aspect of the controversy presented on the present motions has been changed materially from that which was before the court upon the former motion.

MOTIONS for judgment under section 476 of the Civil Practice Act and for summary judgment under rule 113 of the Rules of Civil Practice.

*Werner & McGivney* [*Frank C. Laughlin* of counsel; *Stewart W. Bowers* and *Arthur A. McGivney* with him on the brief], for the plaintiff.

*James L. Quackenbush* [*J. Osgood Nichols* of counsel], for the defendant.

FORD, J.:

Plaintiff is, and has been since before January 1, 1922, the owner of certain shares of stock of the Manhattan Railway Company. Upon each stock certificate held by her appears the indorsement of the defendant in the following form:

" Dividends amounting to six per cent. per annum and an additional amount if earned not exceeding one per cent. per annum until January 1st, 1906, and after that date dividends of seven per cent. per annum upon the par value of the outstanding capital stock of the Manhattan Railway Company are guaranteed and will be paid by the undersigned in accordance with the terms and provisions of a certain indenture made between the Manhattan Railway Company and the undersigned, entered into the 1st of January, 1903.

" INTERBOROUGH RAPID TRANSIT COMPANY.
                              " By J. H. CAMPBELL,
                                        "*Treasurer.*"

This obligation is in accordance with a provision of the lease between the Manhattan Company as lessor and the defendant Interborough Company as lessee of the railroads and property of the Manhattan Company. Plaintiff, alleging the failure to pay the dividends as guaranteed after due demand, sues the Interborough Company directly for the amount in arrears. In *Bowers v. Interborough Rapid Transit Co.* (121 Misc. 250) a complaint substantially similar to that of the plaintiff here was attacked for

insufficiency, and Mr. Justice GAVEGAN held that a good cause of action was stated. That decision has within a few days been affirmed unanimously by the Appellate Division (208 App. Div. 768). A previous motion was made for judgment on the pleadings in the instant case, which was denied by Mr. Justice LEHMAN. (*Peabody* v. *Interborough R. T. Co.,* 121 Misc. 647.) Two motions are before me, one for judgment under section 476 of the Civil Practice Act, the other for summary judgment under rule 113 of the Rules of Civil Practice. Affidavits have been submitted on behalf of both plaintiff and defendant. In addition to these and the pleadings, all the papers and the complete record of the transactions had between the two railroad companies and the committee of security holders have been submitted. Defendant vigorously contends that. on these motions the plaintiff is merely seeking a reversal of Mr. Justice LEHMAN's decision before appeal. I do not think so. Before him were the pleadings only. Here we have conclusive documents which were not considered by the court on the previous motion. On the pleadings alone, Mr. Justice LEHMAN's decision must be held to have been warranted, and I have no thought of impeaching it within the scope of the matters before him. But the aspect of the controversy now presented has been substantially changed from that which was before the learned jurist who passed upon the former motion. Now, I see no obstacle to proceeding to a determination of the case on the merits, since there is not a material fact at issue. The liability of the defendant to the plaintiff is a question of law. I can conceive of nothing outside of renewed arguments which could shed more light upon the controversy than what comes from the documentary proofs and the conceded facts. They are all before me in practically the same form as though the idle formality of impaneling a jury had been complied with, for there is nothing for a jury to decide. It seems to me as clear as noon-day that the lease between the two railroad companies not only was never modified or amended so as to be binding upon all stockholders of the Manhattan Company, but there never was any intention so to modify or amend it. There is in the lease not alone the clause guaranteeing the payment of dividends of seven per cent by the defendant, but the further provision is also there that " no reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the stockholders of record of the lessor," the Manhattan Company. It is obvious to me that the two corporations recognized the validity of the latter provision in all that was done to bring about an agreement of the Manhattan shareholders to accept less than the guaranteed dividend. Holders of

over ninety per cent of the stock did so agree, but it is unquestionable from the language contained in the " plan and agreement," wherein the purposes of those stockholders were reduced to printed form, that no one intended or expected non-assenting shareholders, of whom the plaintiff was one, to be in anywise bound by the arrangement, or that the lease itself should be modified or changed as to them.   All that was done was to persuade a large enough number of the shareholders to agree to a reduction of the guaranteed dividend upon their stock, to make the proposition feasible from a financial and business point of view.   Having obtained the consents of the shareholders of more than nine-tenths of the stock of the Manhattan Company and other concessions immaterial here, the promoters of the project decided to put the scheme into operation with full knowledge that the rights of those shareholders who did not join in it would remain untouched and unprejudiced by the " plan and agreement."   Of course, there was in one sense a modification of the original lease in so far as certain shareholders had voluntarily agreed to accept less than the guaranteed dividend, and thereby the defendant was relieved from the payment of the full dividend rental provided in the lease.   As to those assenting shareholders it does not matter what name you give to the arrangement by which this was brought about.   But so far as the non-assenting shareholders are concerned the original lease is still in full force and effect in respect of the payment in full of the guaranteed dividends.   In this aspect of the case I see no question of public policy involved unless it might be invoked against the associated railroad companies who permitted $60,000,000 in stock bearing the guaranty of one of them to be bought and sold by the public in reliance upon that obligation which the guarantor now seeks to evade.   It is a matter of common knowledge that the public generally did buy and sell those stocks at prices largely enhanced through reliance upon the good faith of the guaranty which they bore.   It is a simple question of property right that is here involved, and the effort of a debtor to repudiate a valid obligation.   Conceding that the debtor is reduced in ability to pay, since when did that become a valid argument for repudiation?   Every day the courts are granting judgments against debtors who find difficulty in discharging their just debts.   They should not be heard to urge their financial embarrassment as an excuse for not paying.   Is a different rule available to a railroad company?   I think not.   Plaintiff is entitled to judgment on both motions.