STEPHEN PEABODY, Appellant, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Respondent.

First Department, April 3, 1925.

**Corporations — guaranty of dividends of another corporation — action by stockholder to recover amount due as dividends under guaranty of defendant, lessee of corporate property and franchises — guaranty was indorsed on stock certificates — motion for judgment on pleadings or in alternative for determination of issues — answer alleged modification of agreement of guaranty — defendant's guaranty indorsed on stock certificate was for benefit of individual stockholders — allegation in answer of modification of guaranty raised issue — order denying plaintiff's motion is modified under power contained in Civil Practice Act, § 476, to provide that issue raised by allegation in answer as to modification shall be tried.**

A guaranty by a lessee corporation which leased the property and franchises of a lessor corporation that it would pay a stipulated dividend on the stock of the lessor corporation as rent, which guaranty is indorsed on the certificates of stock of the lessor corporation, is for the benefit of the individual stockholders of that corporation, and they may individually maintain actions to recover the amount of guaranteed dividends.

In an action by a stockholder to recover the amount of dividends guaranteed in which the defendant interposes as a defense that the agreement of guaranty was modified in such a manner that the plaintiff is not entitled to recover, the denial of the plaintiff's motion for judgment on the pleadings, or in the alternative for a determination of the issues presented for trial by the pleadings, will be modified under the power conferred by section 476 of the Civil Practice Act so as to provide that the issue raised by the allegation in the answer to the effect that the guaranty has been modified will alone be tried.

BURR, J., dissents, with opinion.

APPEAL by the plaintiff, Stephen Peabody, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of October, 1923, denying plaintiff's motion for judgment on the pleadings, or that the court determine what issues should be tried.

*Werner & McGivney [Frank C. Laughlin* of counsel; *Stewart W. Bowers* and *Arthur A. McGivney* with him on the brief], for the appellant.

*James L. Quackenbush [J. Osgood Nichols* of counsel], for the respondent.

CLARKE, P. J.:

This motion was presented solely upon the pleadings. The notice of motion asked: *First,* for judgment for the plaintiff on the pleadings for the amount sued for thereon, together with any other relief plaintiff may be entitled to; *second,* that in the event the court

does not grant judgment for the full amount, that the court determine what issues shall be tried in the action as affecting the parties thereto; *third*, that the plaintiff have such other and further relief as he may be entitled to.

The plaintiff is a stockholder of the Manhattan Railway Company. The amended complaint alleges that the Interborough Rapid Transit Company and the Manhattan Railway Company, on the 1st of January, 1903, entered into a lease whereby the Manhattan Company leased to the Interborough all its railroads, together with all its franchises, rights, etc., for a term of 999 years from the date of the organization of the Manhattan Company, and that as part of the consideration for said lease the Interborough executed and delivered to all the owners of record of the capital stock of the Manhattan Company guaranties in writing upon the certificates of stock, duly signed by the treasurer in the manner and form following:

" Dividends amounting to six per cent per annum and an additional amount, if earned, not exceeding one per cent per annum, until January 1st, 1906, and after that date, dividends amounting to seven (7) per cent per annum, upon the par value of the outstanding capital stock of the Manhattan Railway Company are guaranteed, and will be paid by the undersigned, in accordance with the terms and provisions of a certain indenture made between the Manhattan Railway Company and the undersigned, dated the 1st day of January, 1903.

[signed] INTERBOROUGH RAPID TRANSIT COMPANY,
" By ———— *Treasurer.*"

That said guaranties were executed pursuant to the terms and provisions of article 6 of said lease, the material portions of which are as follows:

" * * * the Lessee hereby covenants and agrees to pay to the Lessor and hereby guarantees to each owner of record of shares of capital stock of the Lessor, dividends, as rent, as hereinafter provided, for the term of two years and nine months from the 31st day of March, 1903. The Lessor hereby covenants and agrees that prior to the date of payment of each of the instalments of rent provided for in this article, it will declare a dividend equal to such instalment, payable upon the date of payment of such instalment, and after or simultaneously with such declaration of dividend, will close its transfer books of stock for a reasonable time prior to such date of payment, and that such dividend shall be payable to the owner of record of its stock, who shall be such, on the date of closing of its transfer books aforesaid. The said dividend rentals

payable to all such owners of record for each of the first two years and the remaining nine months comprised in said two years and nine months shall be an amount equal in the aggregate to the net earnings of the Lessor for each of said three periods respectively, but shall not exceed seven per centum (7%) per annum upon the outstanding capital stock of the Lessor; and shall be not less than six per centum (6%) per annum upon such stock. * * *. No reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor. * * *. From and after the expiration of said two years and nine months, and from January 1st, 1906, the Lessee hereby covenants and agrees to pay to the Lessor, and guarantees to each owner of record of the shares of capital stock of the Lessor as rent, an annual dividend of seven per centum (7%) on his holding of the capital stock of the Lessor.

" The Lessee hereby covenants and agrees, that it will each and every year during the term hereby granted, beginning with the first day of April, 1903, pay to the Lessor as rent for the demised property, and hereby guarantees to the respective owners of record of the shares of the Lessor, the said annual dividends free of all charges, in quarter-yearly payments on the first days of January, April, July and October in each year, which after January 1st, 1906, shall be equal quarterly payments; the first of such payments to be made on the first day of July, 1903; and the Lessee will from time to time execute in proper form a guarantee to the above effect printed or engraved upon the certificates of stock of the Lessor; and as such stock certificates are surrendered for cancellation and issuance of new certificates in place thereof, will from time to time, upon request of the holder renew such guarantee upon all such new certificates. * * *

" Payments of dividends as above provided by the Lessee to the stockholders of the Lessor shall constitue payment of rent, in compliance with the foregoing covenants to pay the same to the lessor."

That on the 1st day of April, 1903, the defendant took possession of the railroads and other property of the said Manhattan Railway Company granted by said lease and commenced the operation of the railroads belonging to said company and ever since said date has continued and is now in possession of and operating the same, and that said lease is still in full force and effect and has not been canceled or terminated.

The complaint further alleges that prior to the 1st day of January, 1922, the plaintiff induced by the aforesaid guaranty, duly became the owner of 1,100 shares of the capital stock of said Manhattan Railway Company, as to 700 of which shares he became the owner

of record on or before the 1st day of January, 1922, and as to the remaining 400 shares he became the owner of record on or about the 4th day of April, 1922; and ever since said respective dates plaintiff has been and still is the owner of record of said shares; that the defendant, at the time plaintiff became the owner of record of said shares, made, executed and delivered to the plaintiff a guaranty in the form and manner heretofore set forth, wherein and whereby defendant guaranteed to the plaintiff that said Manhattan Railway Company would distribute to the plaintiff dividends amounting to seven per cent per annum upon the par value of his said shares of stock in said Manhattan Railway Company, in equal quarter-yearly installments upon the first days of January, April, July and October in each and every year; that no dividends were declared or paid by said Manhattan Railway Company on January 1, April 1, July 1 and October 1, 1922, or January 1, 1923, although due demand upon said company for said dividends had been made, and that said company has neglected and refused to pay the same, of all of which the defendant has had due notice; that due demand was made of the defendant that it perform its said contract of guaranty and pay to plaintiff the amount of said dividends unpaid as aforesaid, but defendant has failed and refused so to do; that all dividend payments due prior to the date of the first default aforesaid were paid by the defendant directly to the respective owners of record of stock of the Manhattan Railway Company, payments being made upon the first days of January, April, July and October in each year during such period.

The complaint then prays for judgment in the amount of said unpaid dividends, with interest from the respective due dates.

The learned court at Special Term held that the complaint stated facts sufficient to constitute a cause of action. A similar complaint was sustained in *Bowers* v. *Interborough Rapid Transit Co.* (121 Misc. 250; affd., 208 App. Div. 768).

The court in *Peabody* v. *Interborough Rapid Transit Co.* (121 Misc. 647), referred to in the order granted in the case at bar, said: "There is no dispute between the parties as to the making of the lease, the execution of the defendant's promise indorsed upon the certificates of stock of the Manhattan Company and the non-payment of the seven per cent dividends. The defendant's denials are concededly not intended to raise an issue as to these facts but are intended to controvert the assertion of the ultimate facts alleged in the complaint: (1) That the promise of the defendant constitutes a 'guaranty'; (2) that the promise of the defendant was executed and delivered to the stockholders of the Manhattan Railway Company; (3) that the lease of the property of the Manhattan Railway

Company is still in full force and effect.    Briefly stated the defendant's contentions are: (1) That its promise was made to the Manhattan Railway Company and only that company can enforce it in the courts; (2) that the promise indorsed on the certificate is dependent upon the continued existence of the promise contained in the lease for the payment of rental thereunder, and (3) that this promise has been modified by mutual agreement of the lessor and the defendant."

The court held, and properly so, that the contention that defendant's promise indorsed upon the certificate is not a promise to the individual stockholders upon which they as individuals may bring suit, has been overruled in *Bowers* v. *Interborough Rapid Transit Co.* (*supra*).

The court held, however, that the answer alleged a modification of the lease by the parties thereto.

The " Nineteenth " paragraph of the answer alleges:

" *Nineteenth:*   On information and belief that pursuant to due authorization the defendant and the said Manhattan Railway Company duly executed the said Plan of Readjustment and Agreement embodied in the said definitive agreement upon November 28th, 1922, and the said lease dated January 1, 1903, from the said Manhattan Railway Company to the defendant Interborough Rapid Transit Company, modified as aforesaid and all the provisions thereof including the guaranty to the holders of the capital stock of the said Manhattan Railway Company of the payment by the defendant of dividends as rental at the rate of ·7% per annum thereupon ceased and determined in every respect inconsistent with or superseded by the terms and conditions of said Plan of Readjustment and Agreement, modified as aforesaid and said Memorandum of Definitive Provisions which and all the provisions thereof including those governing payment of rental dividends to the holders of stock of the said Manhattan Railway Company became thereupon effective and fully binding upon the defendant and upon the said Manhattan Railway Company and the stockholders thereof."

That allegation presented a question of fact, and, therefore, an issue which could not be disposed of in favor of the plaintiff upon this motion for judgment upon the pleadings.    It is of course true that the parties to an agreement may, by mutual consent, modify it or abrogate it.

There was argued at the same time as the case at bar *Nina H. Peabody* v. *Interborough Rapid Transit Co.* (124 Misc. 801) upon a similar cause of action.    In that case, however, two separate motions were made under section 476 of the Civil Practice Act and rule 113 of

the Rules of Civil Practice.    Voluminous affidavits and exhibits were presented, and the learned court held: " It seems to me as clear as noonday that the lease between the two railroad companies not only was n .ver modified or amended so as to be binding upon all stockholders of the Manhattan Company, but there never was any intention so to modify or amend it.    There is in the lease not alone the clause guaranteeing - the payment of dividends of seven per cent by the defendant, but the further provision is also there that ' no reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the stockholders of record of the lessor,' the Manhattan Company.    It is obvious to me that the two corporations recognized the validity of the latter provision in all that was done to bring about an agreement of the Manhattan shareholders to accept less than the guaranteed dividend.    Holders of over ninety per cent of the stock did so agree, but it is unquestionable from the language contained in the ' Plan and Agreement,' wherein the purposes of those stockholders were reduced to printed form, that no one intended or expected non-assenting shareholders, of whom the plaintiff was one, to be in anywise bound by the arrangement, or that the lease itself should be modified or changed as to them. * * *.    Having obtained the consents of the shareholders of more than nine-tenths of the stock of the Manhattan Company and other concessions immaterial here, the promoters of the project decided to put the scheme into operation with full knowledge that the rights of those shareholders who did not join in it would remain untouched and unprejudiced by the ' Plan and Agreement.' * * *.    So far as the non-assenting shareholders are concerned the original lease is still in full force and effect in respect of the payment in full of the guaranteed dividends." ;|

The orders granting the motions for judgment in that case are to be affirmed by an order of this court to be handed down herewith. (See 213 App. Div. 857.)    It may be pointed out that the Railroad Law (§ 148) permitting the leasing of railroads provides that " such contract may provide for the exchange or guaranty of the stock and bonds of either of such corporations by the other."    The guaranty so authorized, when executed by the company and indorsed upon its stock, constitutes a contract with the owner of the stock. Upon its faith and credit the stock is sold.    In the case at bar it appears that $60,000,000 of stock so guaranteed was issued.    In this great commercial city no court should venture to declare such a guaranty worthless unless absolutely compelled to do so.    The validity of contracts together with the enforcement of the obligation of such contracts is the corner stone of the business world, the dis-

tinguishing mark of modern civilization, protected by the Constitution itself. (See U. S. Const. art. 1, § 10, subd. 1; Id. 14th Amendt. § 1; State Const. art. 1, § 6.)

As this motion, however, was made solely on the pleadings, we may not in the decision of this case apply the knowledge of the facts obtained from the record of the *Peabody* case, argued at the same time. But as section 476 of the Civil Practice Act provides that " a judgment may be rendered by the court as to a part of a cause of action and the action proceed as to the remaining issues, as justice may require," and as such relief is prayed for in the motion for judgment, the order appealed from should be modified by providing that the issue raised by the allegation of the answer in the 19th clause thereof alone be tried, and as so modified affirmed.

Merrell, Finch and Martin, JJ., concur; Burr, J., dissents and votes for affirmance without modification.

Burr, J. (dissenting):

I dissent on the ground that the clause in article 6 of the lease which provides " No reduction of the guaranteed annual dividend rental or in the term of years of this lease shall be made without the unanimous consent of the shareholders of record of the Lessor " is contrary to public policy and void, and on the further ground that the guaranty of the payment of the seven per cent rental dividend " in accordance with the terms and provisions " of the lease could not survive a valid revocation or modification of the lease by the parties to the lease, the defendant's obligation to the stockholders under the guaranty, being limited to its obligation to pay rent. The intent and necessary effect of the provision requiring unanimous consent is to limit the Manhattan Company in the exercise of its statutory power of leasing corporate property devoted to a public use. The lease is practically perpetual, the term and rental are its most vital elements. The State, the public and the contracting corporations are thus forever constrained in the use and development of railway property in the public streets. The disabling clause is an attempted contract not to exercise a statutory power. This is explicitly recognized by the concluding words of the very sentence which express the requirement of unanimous consent: " Nothing herein contained shall *otherwise limit the lawful powers* of the Board of Directors and shareholders of the Lessor."

The " lawful power " thus limited is the statutory contractual power conferred by chapter 218 of the Laws of 1839, which is now section 148 of the Railroad Law and, in the phraseology of the Railroad Law, provides that " Any railroad corporation or any corporation owning or operating any railroad or railroad route

within this State may contract with any other such corporation for the use of their respective roads or routes, or any part thereof."

The question, therefore, is as to the power of a public service corporation to nullify by private contract an essential statutory power conferred and here exercised not merely in the interest of its stockholders *but in that of the public.*

The unification of railroad systems by lease has been encouraged as a matter of established public policy in this State since 1839. (*Woodruff* v. *Erie R. Co.,* 93 N. Y. 609)

Section 148 of the Railroad Law provides for guaranties in connection with the leasing of railroad property and, therefore, only *as rent.* Otherwise a guaranty of " dividends " would be *ultra vires.* (See *Continental Insurance Co.* v. *N. Y. & H. R. R. Co.,* 187 N. Y. 225, 236; *Louisville, New Albany & Chicago R. Co.* v. *Louisville Trust Co.,* 174 U. S. 552, 567; *Pennsylvania Steel Co.* v. *New York City Railway Company,* 198 Fed. 721, 762–764.)

The legislative intent and public policy is that railroad corporations shall possess and preserve freedom of action in leasing their properties. The obligation to preserve all corporate powers the exercise of which may be necessary in the public interest is paramount. Statutory corporate powers, the free exercise of which is required by public policy, cannot be abridged by the mere agreement of stockholders.

Freedom of corporate action is necessary to the most efficient use of public franchises in the public streets for the public service. The law does not permit the stockholders to create a sterilized board of directors. All powers directly conferred by statute, or impliedly granted, of necessity must be exercised by the directors who are constituted by the law as the agency for the doing of corporate acts. The stockholders do not confer, nor can they revoke those powers. (*Manson* v. *Curtis,* 223 N. Y. 313, 322; *Durkee* v. *People,* 155 Ill. 354; *Matter of Boulevard Theatre & R. Co.,* 195 App. Div. 518; affd., 231 N. Y. 615; *Katz* v. *H. & H. Mfg. Co.,* 109 App. Div. 49; affd., 183 N. Y. 578.) The first step towards unification of transit is usually the exercise of the leasing power. The Manhattan Company itself represents a merger of lines formerly leased, and it also found it necessary " in the public interest " to modify an existing lease by reducing an excessive rental. (See *Beveridge* v. *N. Y. Elevated R. R. Co.,* 112 N. Y. 1.) As appears by the amended answer of defendant both the Manhattan Company and the Interborough Rapid Transit Company through their respective boards of directors with the assent of over two-thirds of the stockholders of each company have now agreed to a plan of readjustment resulting in a modification of the Manhattan

lease by, among other things, reducing the rental dividend from seven per cent per annum to three per cent for 1922, four per cent for 1923 and five per cent for 1924 and each succeeding year, such plan of readjustment and modification of the lease having, it is alleged, been found necessary to avoid a threatened receivership of the defendant. It is common knowledge that the excessive rental dividends assumed or guaranteed in the unification of the surface railways operating in New York city largely contributed to force the surface railway system into the bankruptcy courts twice within the past twenty years.

The provision of the lease requiring unanimous consent being void and unenforcible, the right of the individual stockholder to receive the rent reserved in the lease cannot survive that of the lessor corporation which is necessarily superseded by the agreement or plan of modification and readjustment. No right can vest contrary to public policy. We cannot recognize a vested right to do a manifest wrong, viz., to abrogate a statutory power conferred upon a public service corporation in the public interest.

There is no estoppel against showing that a contract is invalid, as in violation of a statute or against public policy. No contract by a railroad corporation creating a disability in respect of its public duties can be enforced. In *Thomas* v. *Railroad Co.* (101 U. S. 71, 83), Mr. Justice Miller, speaking for the Supreme Court of the United States, stated the general principle as follows: " That principle is that where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the State, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy."

In Greenhood on Public Policy (p. 316) it is stated: " Any contract which will disable a public or quasi public corporation from performing the duty which it has undertaken, or has been imposed upon it, for the public weal, or compels it to make the public accommodation or convenience subservient to its private interests, is void."

Nothing could more effectually destroy the capacity of a street railway or transit corporation operating in the city of New York to serve the public interest under any plan of unification based as necessarily it must be here under existing franchise contracts on a fixed five-cent fare, than a practically perpetual lease imposing

onerous conditions which cannot be changed or modified in essential respects. Such lease is injurious to the interests of the public, it is incompatible with the declared public policy of the State and cannot be upheld.

For the foregoing reasons, I dissent from the modification and vote to affirm the order appealed from in this action.

Order modified by granting motion so far as to provide that the issues raised by the "nineteenth" paragraph of the answer alone be tried, and as so modified affirmed, without costs.