### DOEPKE ET AL. v. ALMS ET AL.

*Contracts—Validity—Agreement to issue preferred stock by minority of stockholders—Section 8698, General Code—Stipulation placing control in specified stockholders—Specific performance does not lie, when.*

1. A contract entered into by a minority in number of the stockholders of a corporation, although owning more than three-fourths in interest in the shares of stock, whereby the capital stock of the company is to be increased by a vote of the stockholders by the issuance of preferred stock, is in contravention of Section 8698, General Code, in disregard of the rights of the majority in number of the stockholders, and illegal.

2. An agreement between such minority stockholders, the intent and purpose of which is to place the sole and exclusive administration and control of the corporation in certain specified stockholders in disregard of the powers vested in the board of directors, is void, and its breach cannot be made the basis of a cause of action for non-performance.

3. A decree of specific performance will not be granted by a court of equity, where continual supervision over personal acts of faith, and diligence and exercise of judgment in meeting and adjusting relations to new conditions as they arise, will be required in order to make the performance effective.

(Decided May 15, 1922.)

APPEAL: Court of Appeals for Hamilton county.

*Messrs. Kramer & Bettman,* for plaintiffs.
*Messrs. Maxwell & Ramsey; Mr. Jos. S. Graydon* and *Mr. John C. Hermann,* for defendants.

CUSHING, J. Two actions under this title, in the court of common pleas, were heard on demurrers to the second amended petition. The demurrers were sustained. The plaintiffs not desir-

ing to plead further, judgments were entered. The cases were appealed to this court; were heard and will be considered together.

The first cause of action states that the plaintiffs William L. Doepke and Robert H. Doepke entered into a contract with William H. Alms, acting for himself and the members of his family owning stock in The Alms & Doepke Company. The contract is as follows:

"THIS CONTRACT made this 21st day of June, 1919, by and between William H. Alms, acting in his own behalf and in behalf of members of his family owning stock in The Alms & Doepke Company, William L. Doepke and Robert H. Doepke, acting on their own behalf and on behalf of members of their family owning stock in The Alms & Doepke Company, The Doepke Company, a corporation, and The Alms & Doepke Company, a corporation—in consideration of the mutual promises herein, agree as follows:

"1.   The capital stock of The Alms & Doepke Company will be increased by vote of the shareholders by issuance of a cumulative preferred stock to the authorized amount of four million dollars, five hundred dollars ($500) per share par value. The conditions of the preferred stock to be as follows:

"a.   An annual dividend of six per cent. (6%) shall be paid, payable semi-annually, on March 15th and September 15th; all dividends shall be cumulative.

"b.   The preferred stock shall be a first lien upon all the assets of The Alms & Doepke Company and shall be preferred both as to earnings and assets, and in the event of any liquidation, dissolution or

winding up of the company, the holders of the preferred stock shall be entitled, before any distribution is made to the holders of common stock, to be paid in full the par amount of their shares together with all dividends accrued, or in arrears.

"c. The company shall be obliged to retire the preferred stock beginning three years from the date of issue, as per the following schedule; two per cent. annually for ten years; three per cent. annually for ten years; four per cent. annually for ten years; five per cent. annually for two years.

"d. Within five years the company is to create a dividend guaranty fund equal to two years' dividend on the outstanding preferred stock, at least twenty per cent. (20%) thereof to be accumulated annually during said five-year period. If dividends due upon the preferred stock shall at any time be in default for a period of three consecutive semi-annual dividends, the preferred stock to have the same voting rights as the common stock, but until such default the preferred stock to have no voting rights; and in the event of any such default, until such default is cured, the officers of the company are not to receive any salaries, and in the event of any such default and until such default is cured, no dividends are to be paid to common stockholders.

"e. No mortgage or lien to be placed upon the present realty holdings of The Alms & Doepke Company without the consent of three-fourths of the preferred stockholders; and no preferred stock of any character, in addition to the four million hereby authorized, is to be issued without the consent of three-fourths of the preferred stockholders.

"f.  The terms and conditions relative to the preferred stock to be set forth on the common and preferred stock certificates.

"2.  The preferred stock described in (1) hereof to be exchangeable for shares of existing common stock at the rate of four to one; William H. Alms and the Alms interests and family agree to exercise their exchange privilege; The Doepke Company, William L. Doepke, Robert H. Doepke and the Doepke family and interests agree not to exercise their exchange privilege, but to retain their common stock; any other stockholders to have the right to exchange common for preferred; all exchanged common stock to be cancelled.

"3.  William H. Alms at his option to be chairman of the Board of Directors of the reorganized company; the officers of the company upon reorganization to be elected as follows:

> "WILLIAM H. ALMS,
> "*Chairman of the Board of Directors.*
> "WILLIAM L. DOEPKE, *President.*
> "ROBERT H. DOEPKE, *Vice-President.*
> "EDWARD H. L. HAEFNER, *Treasurer.*
> "CHARLES A. STEGNER, *Secretary.*

"4.  In the event that either the Alms interests or the Doepke interests desire to make a sale of any part or all of their stock holdings in the company, the stock of the Alms interests is to be first offered to the Doepkes, and the stock of the Doepke interests to be first offered to the Alms interests.

"The authorized preferred stock remaining after the original exchange of common for preferred has been made, if issued, shall be offered at par to the outstanding preferred stockholders pro rata.

"5. All parties agree to forthwith take all the necessary steps to carry into effect the provisions of this contract, and all such necessary steps are to be made under the direction and subject to the approval of counsel for all parties hereto.

"*In Witness Whereof* the parties have hereunto set their hands and seals this 21st day of June, 1919.

> "WILLIAM H. ALMS,
> "THE DOEPKE COMPANY,
>      "By Robert H. Doepke.
> "WILLIAM L. DOEPKE,
> "ROBERT H. DOEPKE,
> "THE ALMS & DOEPKE COMPANY,
>      "By William L. Doepke."

(Agreement properly witnessed.)

The second amended petition states that the contract was breached in the following particulars:

(1) At the meeting of the board of directors of the company July 2, 1919, William H. Alms did not put a motion, duly made and seconded, to approve the contract. The contract was approved by the board on December 20, 1919.

(2) At a meeting of the stockholders of the corporation on February 11, 1920, William H. Alms, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert did not vote for William L. Doepke and Robert H. Doepke for directors of the corporation, and the election of William H. Alms, Edward H. L. Haefner, George B. Alms, Louise Alms Burdsal, Otto Steinwedel, W. H. Wellman and C. E. Basler as directors of the corporation was illegal and void and contrary to the contract of June 21, 1919.

(3) That the act of the chairman of the meeting of the stockholders, Edward H. L. Haefner, in en-

tertaining a motion to adjourn the meeting, without calling for new business, and the voting of William H. Alms, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert to adjourn were breaches of the contract.

(4) That the act of said board of directors on February 11, 1920, electing William H. Alms, President, George B. Alms, Secretary, and Edward H. L. Haefner, Vice-President and Treasurer, was illegal, void and a breach of the contract of June 21, 1919.

(5) That the act of the board of directors, elected aforesaid on February 20, 1920, discharging William L. Doepke and Robert H. Doepke as officers and employes of said corporation, and stopping their salary account, was a violation of the contract on the part of William H. Alms and Louise Alms Burdsal.

The prayer of the first cause of action stated in the petition was for damages in the sum of $15,000,-000 against William H. Alms, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert.

The second cause of action stated in the second amended petition pleads the same contract and breaches as were pleaded in the first cause of action. It seeks to enjoin William H. Alms, Edward H. L. Haefner, George B. Alms, Louise Alms Burdsal, Otto Steinwedel, W. H. Wellman and C. E. Basler from acting as directors and officers of the corporation, and prays that the act of the directors in discharging William L. Doepke and Robert H. Doepke and stopping their salary accounts be held for naught; that the defendants be restrained from selling or disposing of any of the securities of the corporation, and from paying dividends out of its surplus or undivided profits; and that William H.

Alms, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert be ordered and directed to consent as stockholders to the issuance of preferred stock, as provided in the contract of June 21, 1919, and be ordered and directed to vote for an amendment to the articles of incorporation by which the capital stock of the company shall be increased, according to the terms of the contract, and to take all other necessary steps in carrying out the provisions of the contract. In the alternative and in lieu of the equitable relief, plaintiffs pray that they may recover from William H. Alms, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert damages in the sum of $15,000,000.

As this cause is now heard on demurrer to the second amended petition, it should be further stated that the contract in question was signed by but four of the stockholders of the company. Together they owned 1,917 of the 2,400 shares of the authorized, subscribed and fully-paid capital stock of the company. Nine other stockholders are made parties herein, or relief is sought against them, and there were stockholders other than those above mentioned.

The case presented is that four out of the thirteen stockholders entered into the contract in question. If that contract is one that the parties were authorized by law to make, and it was breached by one of the parties, the demurrers will have to be overruled. On the other hand, if the contract is illegal, the demurrer to each cause of action will be sustained.

The purpose stated in the contract and reasserted in the second amended petition was the placing of the control and management of the corporation and

its business solely, exclusively and in perpetuity in William L. Doepke and Robert H. Doepke. The inducement offered William H. Alms and his family was that they were to receive between three and four million dollars of an investment at six per cent. interest.

In view of the subject-matter of the contract it becomes necessary for us to determine the nature of the contract itself. It will be observed that it was not a voting agreement. It provides that the capital stock shall be increased by a vote of the stockholders. By so doing, it assumes that the majority, in amount, could increase the capital stock of the corporation, and need not consider the three-fourths in number of stockholders. This provision of the contract contravenes Section 8698, General Code, and was made in disregard of the rights of a large majority in number of the stockholders of the corporation. This provision of the contract was illegal. *Venner* v. *Chicago City Ry. Co.,* 258 Ill., 523; *Thompson* v. *Thompson Carnation Co.,* 279 Ill., 54; *Palmbaum* v. *Magulsky,* 217 Mass., 306, and *Winsor* v. *Commonwealth Coal Co.,* 63 Wash., 62.

There were four stockholders parties to the contract:

| | | |
|---|---:|---|
| William H. Alms owned | 1,124 | shares |
| The Doepke Co. owned | 675 | shares |
| William L. Doepke owned | 59 | shares |
| Robert H. Doepke owned | 58 | shares |
| Total | 1,917 | shares |

Other stockholders, parties to this action, Louise Alms Burdsal, Evalyn Alms Smock and Estelle Alms Ebert, together owned 224 shares.

The second amended petition states that the following persons were directors of the company, and under the law stockholders:

Charles A. Stegner,
Edward H. L. Haefner,
George B. Alms,
Otto Steinwedel,
William H. Wellman,
C. E. Basler.

It was stated and admitted in oral argument, and the transcript of the docket and journal entries so shows, that the following stockholders applied for leave to file answers and cross-petitions in this case:

John Speckman,
Eleanora C. Alms,
Walter S. Moser,
Henry Kreyenhagen,
Louise Bockholt,
Edward Nieporte,
Frank J. Denz,
Frank Shevlin,
Richard J. Bensen,
Charles Raresheid,
Helen C. Holmes,
Lillian M. Raresheid.

This record discloses thirteen stockholders parties to this action, or against whom relief is sought, and twelve stockholders seeking to be made parties to the action.

In view of the plain wording of the statute, reasoning and the citation of authority cannot add to or change the conclusion established by the facts.

The intent and purpose of the agreement, as expressed by the parties, was that through its fulfillment there should be vested in the Doepkes, and,

so far as the second amended petition shows, in William L. Doepke and Robert H. Doepke, the sole and exclusive administration and control of the corporation, in disregard of the discretion vested in the directors to exercise the judgment vested in them by virtue of their office. The directors of a corporation stand in the relation of trustees to the stockholders. They are the exclusive representatives of the stockholders, and are charged with the duty of the administration of its business and the use of its assets. The law does not permit a minority in number of the stockholders of a corporation, although representing a majority of shares, to create a sterilized board of directors. Corporations are creatures of statute, and must comply with the exactions and regulations the statute imposes.

Another provision of the contract was that the parties agreed to forthwith take all the necessary steps to carry into effect the provisions of this contract. This obligation cannot be made the ground of a breach, unless the subject-matter of the contract was authorized by law and was legal.

In order to carry out the provisions of the contract the parties must have contemplated the election of a board of directors that would be subservient to the wishes of William L. Doepke and Robert H. Doepke, as they were the ones who were to have the control and management of the business and its assets. As was held in the third proposition of the syllabus in *Manson* v. *Curtis*, 223 N. Y., 313:

"The conditions which the parties wished to meet and their intent also necessitated and contemplated the selecting of directors who should remain passive or mechanical to the will and word of the plaint-

iff. *Held*, that the agreement is illegal and void and its violation is not a basis for a cause of action to recover damages for its non-performance.''

In that case, after stating the facts, Judge Collin, delivering the opinion of the court, says, at page 325:

''The fact that the plaintiff was able to control for voting purposes the eight minority stockholders, who were not parties to the agreement, if proved, would not make them parties or establish their consent to the agreement. They might vote in electing directors as the plaintiff requested without affecting their rights as stockholders. They could thereafter insist that the directors so chosen should assume and perform the duties and responsibilities which the law imposes.''

In another part of the opinion, at page 323, he further states:

''We conclude that the agreement here is illegal and void and its violation is not a basis for a cause of action.''

The second cause of action seeks equitable relief against the parties named. The principal relief sought is specific performance. If the contract was legal, it could not be enforced in equity. A decree of specific performance will not be granted by a court of equity, where, in order to make the performance effective, continual supervision over personal acts of faith, and diligence and an exercise of judgment in meeting and adjusting relations to new conditions as they arise, will be required. Plaintiffs cannot be given either legal or equitable relief based on an illegal contract.

In *Gibbs & Sterritt Mfg. Co.* v. *Brucker*, 111 U. S., 597, the court says, at page 601: ''One who has

himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." And the case of *Cranson* v. *Goss*, 107 Mass., 439, is cited.

In this view of the case it is not necessary to pass upon the questions argued at length with reference to Section 8667, General Code, other than to say that the language of this statute is clear and unambiguous. There can be no question about the word two-thirds, nor can there be any question as to what the legislature had in mind when it said "paid in, in cash or property." The parties to this contract were dealing with a subject-matter over which they did not have entire and exclusive control. They will be presumed to have known the law, and that it was not within the power of the contracting parties to carry out this contract according to its terms.

The demurrers to both causes of action will, therefore, be sustained.

*Demurrers sustained.*


HAMILTON, P. J., and SULLIVAN, J. (of the Eighth Appellate District, sitting in place of BUCHWALTER, J.), concur.