NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2364
_____

CORNELL DELVALLE,

Appellant

v.

SUPERINTENDENT FRACKVILLE SCI; PA STATE ATTORNEY GENERAL;
NORTHUMBERLAND COUNTY DISTRICT ATTORNEY OFFICE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. Civil Action No. 3-15-cv-00521)
District Judge: Honorable Richard P. Conaboy

_____

Submitted under Third Circuit LAR 34.1(a)
on May 1, 2019

Before: RESTREPO, ROTH and FISHER, <u>Circuit Judges</u>

(Opinion filed: February 21, 2020)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Cornell Delvalle appeals from the District Court's order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, we will affirm the judgment of the District Court.

I.

In 2007, Delvalle, an inmate currently confined at the State Correctional Institution, Frackville, was the target of a drug-trafficking investigation in Northumberland County, Pennsylvania. State police enlisted Delvalle's landlord, Robert Santore, as a confidential informant to purchase crack cocaine from Delvalle in a series of controlled buys. As a result of this sting operation, Delvalle was charged with eight counts of delivery of crack cocaine.

Following a mistrial, three counts were withdrawn, and the government filed a motion in limine to preclude Delvalle from presenting at the retrial evidence from two of the three withdrawn counts. Delvalle opposed the motion on the grounds that the two withdrawn counts established that Santore was framing him. For one count, Delvalle had an alibi; for the other, video evidence showed Santore retrieving cocaine from his own

2

garage with no sign that Delvalle was present. The court granted the government's motion and excluded evidence of the two withdrawn counts.[1]

At the jury trial, the government presented Santore's testimony,[2] as well as the testimony of four law enforcement officials involved in the investigation, and the manager of the McDonald's where one of the controlled purchases purportedly occurred. Santore was the only witness who could provide direct testimony about the transactions. He was the only person to observe the drug exchanges, including the McDonald's controlled buy. There was no audio or video recording of any exchange and no forensic evidence linking Delvalle to the drugs found on Santore. However, other witnesses, specifically the law enforcement officials, provided evidence to show that Delvalle sold cocaine to Santore. Officer Brennan testified that he strip-searched Santore and searched his car before each controlled buy, witnessed Santore call Delvalle to request cocaine and establish meeting places for the transaction, and saw Delvalle at the transactions.

Delvalle's counsel cross-examined the witnesses. His defense theory was that Santore had a different source for the crack cocaine and was framing Delvalle in return for preferential treatment from the government on his own drug charges. The jury was

---

[1] The government argued to the Superior Court on direct appeal that the two withdrawn counts would have misled the jury or caused undue delay, and each would have required a "mini-trial[]." App. 63. The government now notes that there is little evidence available regarding the count for which Delvalle claims he had an alibi. In the other excluded count, Santore had testified at the first trial that the police watched him order cocaine and strip-searched him and his car and that Delvalle changed the drug delivery location to Santore's garage.

[2] At trial, Santore confirmed that he was testifying pursuant to a plea agreement with the government.

not convinced.  Delvalle was convicted of all five counts of delivery of crack cocaine, as well as four counts of criminal use of a communication facility and two counts of criminal conspiracy to deliver crack cocaine.  He was sentenced to seventeen-and-a-half to forty-one years' imprisonment.

Delvalle appealed to the Superior Court of Pennsylvania, claiming he was denied his due process right to present a defense and confront his accuser when the trial court precluded evidence related to the withdrawn counts.  Delvalle's conviction was affirmed. The Superior Court noted that the evidence was indeed probative of Santore's credibility and the trial court had previously ruled that it would not confuse or distract from the issue at trial.  Thus, excluding it was error.  Nevertheless, the Superior Court found that error to be harmless.  It acknowledged the following:  (1) There was no direct video or audio evidence of any exchange between Delvalle and Santore, even though a camera had been present at each controlled buy; (2) there was no fingerprint evidence linking Delvalle to the crack cocaine found on Santore after each controlled buy; (3) there were discrepancies between Santore's testimony and phone records; (4) none of the pre-recorded buy money that had allegedly been given to Delvalle by Santore had been found in Delvalle's possession; and (5) Santore had a motive to lie because he would likely receive a favorable sentence in his own pending narcotics charges in exchange for his testimony against Delvalle.  Delvalle, according to the court, had been able to present a strong circumstantial case that Santore had framed him and the excluded evidence would not have fundamentally changed how the jury viewed the case.

4

Delvalle filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied. He then filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. The District Court denied habeas relief and declined to grant a certificate of appealability. Delvalle filed a notice of appeal, which this Court construed as an application for a certificate of appealability under 28 U.S.C § 2253(c)(1). We granted the application.

## II.[3]

Delvalle contends he was denied his due process right to present a defense and confront his accuser when the trial court precluded evidence that Santore provided false information with respect to the withdrawn charges. This argument is unpersuasive.

The Superior Court held that the trial court erred but found that its error was harmless; so, we assume, without deciding, that a constitutional error occurred at Delvalle's trial.[4] We assess harmlessness determinations using the analysis set forth in

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254 over Delvalle's habeas corpus petition. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the District Court based its decision on a review of the state-court record and did not conduct an evidentiary hearing, our review of its order is plenary and we apply the same standard the District Court applied. *Branch v. Sweeney*, 758 F.3d 226, 232 (3d Cir. 2014); *Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir. 2005). We review the "last related state-court decision" of the state court, which here is the Superior Court's decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).
[4] *See Davis v. Ayala*, 135 S. Ct. 2187, 2193 (2015).

*Brecht v. Abrahamson*.[5]   Under that standard, Delvalle must establish that the error "had

substantial and injurious effect or influence in determining the jury's verdict."[6]   The

Supreme Court has recently confirmed that the *Brecht* standard governs our harmless

error analysis on collateral review.  However, where, as here, the state court concluded

that the error was harmless beyond a reasonable doubt on direct review,[7] we must defer

to its determination under the framework established by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA).[8]   AEDPA provides that, when a state court rejects

a petitioner's claim on the merits, a federal court may not grant the writ unless the state

court's decision (1) "was contrary to, or involved an unreasonable application of, clearly

established [f]ederal law, as determined by the Supreme Court of the United States," or

(2) "was based on an unreasonable determination of the facts in light of the evidence

presented in the [s]tate court proceeding."[9]   Thus, we may not award habeas relief unless

---

[5] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The District Court denied Delvalle's claim based on the standard set forth in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and found that the trial court's evidentiary ruling "did not infuse the trial with unfairness as to deny due process."  App. 12.  Although the District Court erred in failing to analyze the Superior Court's harmlessness determination under *Brecht* and its progeny, this error was harmless, and both parties' appellate briefs correctly analyzed Delvalle's claims under *Brecht*.  *See TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019) ("We may affirm on any basis supported by the record, even if it departs from the District Court's rationale.").

[6] *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[7] *See Chapman v. California*, 386 U.S. 18, 24 (1967).

[8] *Davis*, 135 S. Ct. at 2198 (holding that a *Chapman* determination is adjudication on the merits and thus subject to AEDPA).

[9] 28 U.S.C. § 2254(d); *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848 (3d Cir. 2017).  The term "clearly established" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

6

the harmlessness determination itself "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[10]  Put another way, we ask "whether a fair-minded jurist could agree with the Superior Court's conclusion" that the error was harmless, and if she could, then Delvalle "necessarily"[11] cannot show that the trial error "had substantial and injurious effect or influence in determining the jury's verdict" under *Brecht*.[12]

This is a difficult standard to meet—a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[13]  Delvalle cannot meet it here.  In order to assess harmlessness, we must consider the excluded evidence against the backdrop of the evidence presented at trial, in light of the so-called *Van Arsdall* factors.[14]  In *Van Arsdall*, the Supreme Court described five factors to guide Confrontation Clause errors stemming from a trial court's limitation on cross-examination, but we focus on just three of them, which we find are dispositive in holding that a fair-minded jurist could agree that the trial court's error was harmless. These three factors are (1) the overall strength of the prosecution's case, (2) whether the

---

[10] *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Davis*, 135 S. Ct. at 2199.

[11] *Johnson v. Lamas*, 850 F.3d 119, 132-34 (3d Cir. 2017).

[12] *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 775).

[13] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

[14] *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see Littlejohn v. Trammell*, 704 F.3d 817, 844-45 (10th Cir. 2013) (analyzing harmlessness under *Brecht* using the *Van Arsdall* factors).

excluded testimony was cumulative, and (3) the extent of cross-examination otherwise permitted.[15]

With respect to the first factor, the evidence presented at trial, while circumstantial, clearly pointed to Delvalle as the provider of cocaine, even discounting Santore's testimony entirely. For example, with respect to the December 3 controlled buy, Officer Brennan testified that he watched Santore call Delvalle and arrange to meet at a nearby McDonald's, strip-searched Santore and his car, gave him $300 in photocopied currency, followed Santore to the McDonald's, saw Delvalle and his codefendant arrive and leave two minutes later, followed Santore back to the police department, and strip-searched Santore and his car again. Sergeant Witmer observed the transaction from his cargo van and testified that Santore gave money to Delvalle as Delvalle gave him a McDonald's cup. At the station, Santore handed over the McDonald's cup, which contained a white substance that was later confirmed to be cocaine. The other controlled buys were conducted in a similar fashion. In some of them, Officer Brennan was able to observe Delvalle speak with Santore, and sometimes not; sometimes, Santore called Delvalle in the presence of police, and sometimes not; but in every controlled buy the evidence clearly indicated that Delvalle and his codefendant were the source of the cocaine. Officer Wynn testified that it was not unusual for officers

---

[15] *See Van Arsdall*, 475 U.S. at 684. The other two factors are "the importance of the witness' testimony in the prosecution's case, . . . [and] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points . . . ." *Id.* Neither of these factors weighs against harmlessness to the extent that the result of our analysis would be different.

to be present and yet not witness the actual "hand-to-hand" transaction, because such transactions occurred quickly.[16]

Second, the excluded evidence undermined the prosecution's case in a manner similar to the manner in which Delvalle's counsel undermined the prosecution's case via cross-examination. As described above, Delvalle was able to elicit testimony that called into question Santore's reliability, including the lack of video evidence and discrepancies in the phone records. The excluded evidence would similarly have cast doubt on Santore's reliability. Given that the jury did not accept Delvalle's theory that Santore framed him, the excluded evidence would have been cumulative.

Finally, Delvalle concedes that he was able to cross-examine Santore and the other officers extensively at trial. Indeed, that is how he presented his theory that Santore had framed him. This factor thus weighs in favor of finding harmless error.

In sum, a fair-minded jurist could agree with the Superior Court's judgment that the trial court's error was harmless. Delvalle therefore cannot show that the exclusion of the two withdrawn charges "had substantial and injurious effect or influence in determining the jury's verdict."[17] While we might have reached a different result with respect to harmlessness if we were reviewing Delvalle's claim de novo, under AEDPA, that is not our role. We will therefore affirm the denial of the habeas petition.

---

[16] App. 351.

[17] *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776).

9